**GRAHAM ENGINEERING CORPORATION,
Plaintiff,**

v.

**KEMP PRODUCTS LTD., Kemp Products, Inc., and Carlisle Corporation, Defendants.**

Civ. A. No. C 75–876.

United States District Court, N. D. Ohio, E. D.

June 20, 1976.

James H. Woodring, Squire, Sanders & Dempsey, Cleveland, Ohio, Albert E. Fey, John A. Howson, of Fish & Neave, New York City, of counsel, for plaintiff.

Albert R. Teare, Teare, Freeman, Sammon & Taylor, Cleveland, Ohio, for defendants.

## MEMORANDUM AND ORDER

WILLIAM K. THOMAS, District Judge.

In this patent action plaintiff Graham Engineering Corporation (Graham), a Pennsylvania corporation, originally sought damages and an injunction against all defendants based upon defendants' alleged infringement of United States Patent No. 3,317,642, "Volume Stabilization of Molded Plastic Containers by Heating after Molding." In 1973 defendant Kemp Products Limited (hereafter KPL), a Canadian corporation, entered into a licensing agreement with the Carlisle Corporation, an Ohio corporation, for the production of plastic milk bottles using a volume stabilization process patented by KPL, U.S. Patent No. 3,716,-606, "Method of Stabilizing Thermoplastic Containers." Graham contends that the process licensed under the KPL patent infringes the Graham patent.

This suit was filed on October 6, 1975. On February 12, 1976, plaintiff and defendant Carlisle Corporation submitted a final decree, approved by the court, admitting the validity of the Graham patent '642, perpetually restraining Carlisle "from further infringement of said patent . . . until after the expiration of said patent or until further order of this Court, provided, however, that use of such methods under [patent '642], pursuant to a license agreement between the plaintiff and Carlisle Corporation, shall not constitute a violation of said injunction," and providing that there would be no accounting between Graham and Carlisle, each party bearing its own costs.

On February 5, 1976, defendant Kemp Products, Inc. (KPI), an Ohio corporation, replied, denying infringement and asserting counterclaims for a declaration that KPI has not infringed or induced infringement of plaintiff's patent, that the patent is unenforceable against KPI, and that on vari-

ous grounds the patent is invalid. Pursuant to 35 U.S.C. § 285 KPI also claims that plaintiff has acted inequitably and seeks its costs and attorney fees, trebled.

Defendant KPL has moved to quash service of process on the ground that it is not subject to the *in personam* jurisdiction of this court. Service was effected by certified mail upon KPL in Canada and by personal service upon an entity described as "Kemp Products, Inc. (U.S. counterpart of Kemp Products Ltd.)" at the address of Kemp Products, Inc. in Cleveland. KPL asserts that it has no "U.S. counterpart."

Following initial briefing on the jurisdiction issue this court, by letter, asked the parties to furnish the court with additional documentation and information to be considered as part of the factual record. The principal documents furnished pursuant to the request are now summarized. KPL has supplied an affidavit from Paul G. Kemp, chairman of the board of KPL and an officer of KPI, concerning the relationship of KPL and KPI. The affidavit states that KPL has supplied no technical assistance to Carlisle pursuant to the licensing agreement. Additionally, KPL has supplied a copy of the licensing agreement and copies of various letters relating to the licensing agreement and a microwave oven, which was supplied by a Canadian corporation apparently unrelated to KPL.[1]

After searching its own files Graham has supplied a copy of a letter from KPL to Graham which, Graham says, reveals a cross-licensing arrangement between KPL and Sun Industries, Inc., an Ohio corporation; a copy of an assignment to KPI by KPL of six patent applications; and copies of KPI's 1971 and 1973 financial statements, which, according to Graham, reveal a number of relationships between KPI and KPL. Although KPL's counsel has informed the court that company records are being searched for mail and telephone contacts by KPL with Ohio, no information concerning such contacts has yet been sup-

plied to the court. Nevertheless, for reasons which will receive explication later in this opinion, it is concluded and determined that enough information is now available to the court to justify the conclusion that *in personam* jurisdiction over defendant KPL does lie in this court. Thus the jurisdiction question will be discussed in light of the above-described undisputed submissions and the briefs of the parties.

## I.

Initially the nature of the cause of action asserted by Graham against KPL requires some examination. Since Carlisle and Graham have settled their suit, no ongoing infringement is at issue. Graham, rather, seeks damages from KPL on the grounds that KPL induced Carlisle to violate the Graham patent, citing 35 U.S.C. § 271(b): "Whoever actively induces infringement of a patent shall be liable as an infringer."

In its reply brief in support of its motion to quash plaintiff's service of summons, KPL asserted that plaintiff actually based its cause of action on section 271(c):

Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patent process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

Because, *inter alia,* Paul Kemp's affidavit submitted in response to the court's request and other documents and letters in the record indicate that KPL did not supply Carlisle with a microwave oven, KPL asserts that it cannot be liable to Graham under the terms of section 271(c). If Graham ever attempted to assert such a claim, its subsequent briefs make it clear that section 271(c) has been abandoned as the

---

1. Plaintiff originally contended that this microwave oven had been supplied by KPL for use in the process patented by KPL in the '606 patent.

basis for a cause of action and that the suit is based primarily on section 271(b).

A cause of action based upon section 271(b) has been said to sound in tort, *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137 (7 Cir. 1975); but, as will be discussed hereafter, the court concludes that the nature of the action, and particularly where the alleged tort took place, need not be considered in deciding the jurisdictional issue. The relevant question is whether KPL can be said to have transacted business in Ohio, pursuant to Ohio Rev. Code § 2307.382(A)(1).

## II.

The affidavit of Paul Kemp asserts, and plaintiff does not deny, that he and one James Steele each own one-third of the shares of "a company called 'Associated,'" which company in turn owns 50 percent of the common shares of KPI. Kemp states that he and Steele each own approximately one-third of the issued outstanding common shares of KPL, that Kemp owns approximately 12 percent of the preferred shares of KPL, and Steele owns approximately 24 percent of KPL's preferred shares. These facts indicate, of course, that KPI is not a subsidiary of KPL. Further, although the 1971 and 1973 KPI balance sheets submitted by plaintiff bear evidence of a number of intercorporate dealings between KPL and KPI, there is nothing in the nature of those dealings as they currently appear in the evidence to support a judgment that

2. Even if KPI could be characterized as a subsidiary of KPL, that relationship alone would not make KPI into KPL's "counterpart" for purposes of establishing *in personam* jurisdiction over KPI. *In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 234 n. 26 (6 Cir. 1972).

3. Plaintiff cites *Kockum Industries, Inc. v. Brunette Machine Works Ltd.,* 442 F.2d 420 (9 Cir. 1971), *aff'd,* 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972), and *Chas. Pfizer & Co. v. Laboratories Pro-Tec Prodotti Therapeutici,* 278 F.Supp. 148, 153 (S.D.N.Y.1967), to support the contention that federal law governs as to jurisdiction. Of these two cases *Kockum* is concerned only with venue, and *Pfizer* supports plaintiff's argument only in obscure dictum.

KPI is somehow the United States "counterpart" of KPL. Hence, the court concludes that KPL is justified in its assertion that the organization denominated "Kemp Products, Inc. (U.S. counterpart of Kemp Products Ltd.)" does not in fact exist.[2] For this court to assert jurisdiction over KPL, a basis will have to appear in the activities of KPL itself.

## III.

### A.

Plaintiff initially contends that whether this court has jurisdiction of the action is strictly a matter of federal law. The cases cited for this proposition support it only by indirection;[3] actually Rule 4(e), Federal Rules of Civil Procedure, provides to the contrary:

. . . Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state, . . . service may . . . be made under the circumstances and in the manner prescribed in the [state] statute or rule.

Since patent actions are based directly upon federal law, doubtless Congress could provide statutorily for federal rules governing jurisdiction, as it has done for venue (28 U.S.C. § 1400). But Congress has not done so on a general basis, and without such

Other courts have noted more directly that a general federal law as to *in personam* jurisdiction, based upon contacts with the United States generally rather than with the specific state in which the action is brought, is appropriate with regard to federal causes of action. *E. g., Cryomedics, Inc. v. Spembly, Limited,* 397 F.Supp. 287 (D.Conn.1975). The point that these decisions fail to discuss is the statutory source of such jurisdictional authority to provide a uniform federal law to govern such questions. In any event this court need not consider such matters in this case, for it is clear that state law may be relied upon in the alternative, and that jurisdiction is available thereunder. Cf. *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137 (7 Cir. 1975).

congressional direction the courts will look to the state in which the district is located to determine whether jurisdiction may be asserted over an out-of-state defendant. Hence it is appropriate to apply Ohio law governing service of summons on persons "not found in the state." *See Japan Gas Lighter Association v. Ronson Corp.,* 257 F.Supp. 219, 231 (D.N.J.1966).

### B.

The Ohio statutory provision to be construed in this case is the state's long-arm statute, Ohio Rev.Code § 2307.382. In pertinent part that section reads:

> (A)  A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
>> (1)  Transacting any business in this state;
>
> *     *     *     *     *     *
>
> (B)  When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.[4]

Research demonstrates that the "transacting business" section of the long-arm statute has received more attention and interpretation than any other subsection of the provision.[5]  In particular, the subsection was the subject of detailed attention in *In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220 (6 Cir. 1972).  The approach utilized in *In-Flight* was recently reaffirmed in *Davis H. Elliot, Inc. v. Caribbean Utilities Co., Ltd.,* 513 F.2d 1176 (6 Cir. 1975), a case that construed the "transacting business" subsection of the Kentucky long-arm statute on the same basis utilized by *In-Flight* in construing the Ohio long-arm statute.

*In-Flight* established that the Ohio legislature intended to extend the jurisdiction of its courts on the basis that a company or individual has transacted business in Ohio to the limits of what is constitutionally permissible under the Due Process Clause of the Fourteenth Amendment.[6]  Relying upon *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374 (6 Cir. 1968), *In-Flight* noted that

> In an effort to focus the case by case inquiry which must be made by the federal courts in considering the due process limits of a "longarm" statute, this Court has adopted a three-fold mode of analysis in jurisdictional cases where jurisdiction

---

**4.**  Two other subsections of § 2307.382(A) could conceivably apply to this case:

> (3)  Causing tortious injury by an act or omission in this state;
>
> (4)  Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; . . . . .

*In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220 (6 Cir. 1972), discussed in the text, *infra,* held, however, that, with exceptions not here pertinent, the various subsections of part (A) provide separate jurisdictional bases. Because the court finds jurisdiction in this case provided by subsection (A)(1), it is thus not necessary to consider whether subsections (A)(3) and (4) would supply bases for jurisdiction. As to whether they might, see *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137 (7 Cir. 1975).

**5.**  *See, e. g., M & W Contractors v. Arch Mineral Corp.,* 335 F.Supp. 972 (S.D.Ohio 1971), *rev'd* 466 F.2d 1339 (6 Cir. 1972); *Air Transport, Inc. v. Ransom Aircraft Sales,* 333 F.Supp. 1106 (S.D.Ohio 1971); *Didactics, Inc. v. Welch Scientific Co.,* 291 F.Supp. 890 (N.D. Ohio 1968); *Moriarty & Co. v. General Tire & Rubber Co.,* 289 F.Supp. 381 (S.D.Ohio 1967); *American Compressed Steel Corp. v. Pettibone Mulliken Corp.,* 271 F.Supp. 864 (S.D.Ohio 1967).

**6.**  Since this case presents a federal question in a federal court, technically it is the Due Process Clause of the Fifth, not the Fourteenth, Amendment that requires construction. For purposes of determining the constitutional due process limitation on state long-arm statutes, at least, the factors to be considered in interpreting the Fifth and Fourteenth Amendment Due Process Clauses have been held to be identical. *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1143 (7 Cir. 1975). Courts that have expressed the view that federal law should govern the area, see note 2, *supra,* have opined that the Fifth Amendment standard is more liberal.

is predicated upon a single act of the defendant.

"First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable." *Southern Machine Co. v. Mohasco Industries, Inc., supra,* 401 F.2d at 381.

466 F.2d at 226.

■ The record shows that KPL purposely availed itself of the privilege of transacting business in Ohio. Not only did the licensing agreement with Carlisle, pursuant to which hundreds of thousands of bottles have been manufactured,[7] provide for the payment of a fee, but Kemp was also given the right to inspect Carlisle's books. Although Paul Kemp's affidavit asserts, and plaintiff has not produced evidence to deny, that KPL never provided any technical assistance to Carlisle in Ohio,[8] the contract provided that KPL was to supply any "technical information and confidential knowhow" that it deemed necessary to allow Carlisle to utilize properly the patented process and any improvement therein. If Carlisle developed any improvements in the process, it was required by the contract to report them to KPL. Further, the contract required that Carlisle send samples of the bottles it manufactured to KPL in Canada for testing and approval.[9]

It is also clear that this action arises out of KPL's activities in Ohio. Graham, of course, was not a party to the KPL-Carlisle licensing agreement; but the very basis of the cause of action is that KPL induced Carlisle to infringe the Graham patent by entering into the agreement, to be performed in Ohio. Thus this action does arise out of activities engaged in in Ohio. Indeed it is difficult to comprehend where else the activities that form the action's basis took place.[10]

## C.

■ The inquiry must finally turn, then, to the question of whether "the acts of [KPL] or consequences caused by [KPL] . . . . have a substantial enough connec-

---

7. A memorandum, whose source is not revealed on its face but which is asserted by plaintiff to have been written by Paul Kemp, was submitted to the court by plaintiff as exhibit D to its memorandum in opposition to the motion to dismiss. Neither its genuineness nor its accuracy is challenged by KPL. It reveals that from April, 1973, to August, 1975, Carlisle manufactured 850,226 milk bottles and paid KPL a licensing fee of $4,251.13 thereon. Hence the undisputed facts of record reveal that KPL has been transacting business in Ohio pursuant to its licensing agreement with Carlisle.

8. Letters supplied to the court by KPL indicate that prior to the 1973 licensing agreement KPL did provide some technical assistance to Carlisle with regard to the operation of the microwave oven supplied by a different Canadian manufacturer.

9. KPL points out that the contract was signed in Canada and contains the following provision:

The LICENSEE hereby recognizes and acknowledges the validity of the patent rights licensed hereunder and agrees not to contest during the life of this agreement such validity either directly or indirectly by assisting others. In this regard the provisions hereof shall be interpreted according to the laws of the Province of Ontario and not according to the laws of any jurisdiction of the United States of America.

It is settled, however, that the technicalities of where a contract is executed and the law to be used in its interpretation are not dispositive of the question of whether the activities carried out pursuant to the contract connect a party sufficiently with a state for jurisdictional purposes. "[T]he technicalities of the execution of the contract and the contractual provision that the contract was made in New York and was to be interpreted according to the law of New York cannot change the business realities of the transaction." *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 382 (6 Cir. 1968).

10. "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contract." *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 384 n. 29 (6 Cir. 1968).

# 922

tion with [Ohio] to make the exercise of jurisdiction over [KPL] reasonable." *In-Flight, supra.* While the resolution of this issue necessarily turns upon the facts of each individual case, it is helpful to examine the primal Sixth Circuit case in this area, *Southern Machine Co. v. Mohasco Industries, Inc., supra.* Plaintiff Southern Machine, a Tennessee corporation, sought a declaratory judgment that a patent under which it had taken out a license with Mohasco was invalid. In sustaining the fairness of a Tennessee court asserting jurisdiction over Mohasco, a New York corporation, the court of appeals noted that Tennessee had a substantial interest in protecting its own residents and in the adjudication of controversies that have an impact within the state. Although Graham is not an Ohio corporation, Ohio clearly has a substantial interest in the adjudication of controversies arising out of a licensing agreement that was to be performed in Ohio, and to which an Ohio corporation is a party. While Graham and Carlisle have settled between themselves, this suit arose out of substantial manufacturing activities in this state. KPL, which knowledgeably entered into a licensing agreement with an Ohio corporation, can claim no unfair surprise in its having to contend with the legal consequences of that agreement in the Ohio courts. In sum, the court is unable to see how its exercise of jurisdiction over KPL is unreasonable or offends "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1943).[11]

Therefore, for the reasons stated in this opinion, defendant KPL's motion to quash service of summons in this case is overruled.

IT IS SO ORDERED.

11. The following quotation from *Japan Gas Lighter Assoc. v. Ronson Corp.,* 257 F.Supp. 219, 235 (D.N.J.1966), with the names changed to those applicable in the present case, bears repeating:

> The fact that [plaintiff is] not [an Ohio] resident does not require a different result . . . . In some cases the Courts have emphasized the forum State's interest in protecting its residents, especially in regard to certain areas of commerce such as insurance. . . . The absence of that consideration here is offset by the fact that there is no competing interest of another forum in which [KPL's] defense of its [alleged inducement to infringe] would be appreciably easier.