426 A.2d 635

**William KOENIG, Appellant,**

**v.**

**INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, AFL–CIO and Boilermakers Local Lodge No. 5.**

**Robert BROMMAGE, Appellant,**

**v.**

**INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, AFL–CIO and Boilermakers Local Lodge No. 5.**

Superior Court of Pennsylvania.

Argued Dec. 5, 1979.

Filed Nov. 7, 1980.

560

Barry R. Elson, Philadelphia, for appellants Koenig (in No. 571) and Brommage (in No. 572).

Bruce R. Endy, Philadelphia, for appellees.

Before SPAETH, CAVANAUGH and O'KICKI, JJ.*

SPAETH, Judge:

These are consolidated appeals from orders sustaining appellee Boilermakers Local Lodge No. 5's preliminary objections and dismissing appellants' complaints for lack of jurisdiction, and also, in the alternative, on the ground of *forum non conveniens.*

Accepting as true, for the purposes of this inquiry, all well–pleaded facts, *Frisch v. Alexson Equip. Corp.,* 423 Pa. 247, 224 A.2d 183 (1966), we may summarize appellants'

---

* Judge Joseph F. O'Kicki of the Court of Common Pleas of Cambria County, Pennsylvania is sitting by designation.

amended complaints [1] as follows. Appellants are New York residents, and at all times material to their cause of action were members in good standing of appellee, which is an unincorporated association organized and existing under New York law, with its principal office located in Great Neck, New York, and affiliated with and governed by the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers AFL–CIO, also a defendant below. One George Boylan served as appellee's Business Manager at all times material to appellants' cause of action. On July 27, 1972, appellant Koenig was hired by Boylan as appellee's Assistant Business Manager and occupied that position until May 25, 1978, when he was discharged by Boylan. On February 14, 1977, appellant Brommage was hired as appellee's Assistant Business Manager and occupied that position until May 25, 1978, when he was discharged by Boylan. Appellants' employment agreements with appellee specified that their weekly salary should be equal to the base pay of General Foreman as provided in appellee's construction agreement, and that they were entitled to an allowance of $20 per day, an allowance of $75 per day for official out–of–town business, and the use of a car. While employed, both appellants received considerably less pay than the employment agreements specified. Although they both made frequent out–of–town trips on official business, including trips to Willow Grove and other points in Montgomery County, Pennsylvania, for the purpose of attempting to organize employees and to attend meetings as union trustees of the Boilermakers Medical Plan, they did not receive $75 a day for their expenses. Appellant Brommage "reasonably believes" that he made 50 out–of–town trips for which he was not reimbursed, while appellant Koenig "reasonably believes" that he made 100 such trips. Appellants were also not provided with a car, they were not paid a $20 daily allowance for working a sixth day of a

1. Appellants amended their original complaints to include allegations that they were precluded by article XVII, section 5(a), of the International's constitution from seeking relief within their union. *See* discussion *infra*.

week, and they did not receive various welfare, pension, vacation, and annuity benefits to which they were entitled.

■ Appellee filed preliminary objections to appellants' complaints, as did the International. Appellee's preliminary objections included a "Petition Raising A Question of Jurisdiction and Service", which stated:

1. At all times relevant to the instant litigation [appellee] has been and is an unincorporated labor organization with its principal office at 320 Northern Boulevard, Great Neck, New York.

2. The [appellee] has not been personally served with the Complaint pursuant to Rules 1009 and 2157 of the Pennsylvania Rules of Civil Procedure, 42 Pa.C.S.A. §§ 1009, 2157 and this Honorable Court does not have jurisdiction over the person of the [appellee].

3. Service of the Complaint was attempted by having a copy served upon Boilermakers Local # 13, located in Newportville, Bucks County, Pennsylvania. However, no statute or rule of court authorizes service of process upon a sister local union which has no connection with [appellee] except that they are affiliated with the same International Union.

4. Affiliation with the International Union is governed by the International Constitution, (a true and correct copy of which is attached hereto as Exhibit "A").

5. No local union is authorized to act as agent for or accept service of process on behalf of any sister local. WHEREFORE, [appellee] requests this Honorable Court to dismiss the [appellant's] complaint for lack of personal service.

Appellants filed no answers to these preliminary objections and therefore admitted the well–pleaded facts. *See The Union National Bank of Pittsburgh v. L. D. Pankey Institute, et al.*, 284 Pa.Super. 537, 426 A.2d 624 (1980).

After appellants amended their complaints to allege that they were precluded by the International's constitution from seeking relief within their union, appellee filed a second set

of preliminary objections, as did the International, in the nature of a demurrer, alleging that appellants had not exhausted their internal remedies. Appellants filed answers to these preliminary objections, denying that internal remedies were available to them.

All of the preliminary objections were argued before the lower court, which held that it did not have *in personam* jurisdiction over appellee because appellee had not engaged in a "definite and substantial pattern of conduct" in Pennsylvania, and that even if it did have jurisdiction over appellee, Pennsylvania was an inconvenient forum. The present appeals are from this order. The lower court also held that it had *in personam* jurisdiction over the International, but that issue is not before us since the International has not appealed.

■ Preliminary to their argument directed at the lower court's refusal to exercise jurisdiction over appellee, appellants make two arguments that may be disposed of summarily. Appellants argue that appellee never objected to the exercise of jurisdiction over it because its "Petition Raising A Question of Jurisdiction and Service" was only directed to improper service of the complaint. Though the bulk of the petition, which we have quoted above, is directed to improper service, paragraph 2 alleges that "this Honorable Court does not have jurisdiction over the person of the [appellee]." Appellants also argue that appellee's preliminary objections to the amended complaints superseded the jurisdictional objection to the original complaints because in the objections to the amended complaints appellee did not reassert the jurisdictional objection. Goodrich–Amram, however, notes that when a plaintiff amends his complaint, the defendant need not reassert a preliminary objection to the original complaint if the objection remains outstanding. Goodrich–Amram 2d § 1028(c):1 states:

> If the amendment [of the complaint] removes all of which the defendant has complained, the preliminary objection should be withdrawn or dismissed by the court. If the defendant is not satisfied that the amendment cures all

the errors, he need not file a new preliminary objection, but may order down the original objection for argument on the original complaint as well as the amendment. If the amendment contains new errors, not appearing in the original complaint, the defendant must file a new preliminary objection to raise these new matters. (Citations omitted.)

See *Advance Building Services Co. v. F. and M. Schaeffer Brewery Co.*, 252 Pa.Super. 931, 384 A.2d 931 (1978); *Hellam Twp. v. Bailey*, 88 York Leg.Rec. 9 (1974). Here, appellee could not have ordered its preliminary objections to the original complaints down for argument after appellants amended their complaints because it had additional objections to make. It was unnecessary to reassert the preliminary objections to the original complaints. Since the objections were already of record and awaiting decision, appellants' amended complaints had no effect on them. *See Byers v. Ward*, 368 Pa. 416, 84 A.2d 307 (1951); *O'Brien v. Zurich Insurance Company*, 46 D. & C. 2d 151 (Del.Co.1968).

We may now turn to appellants' principal argument, that the lower court should have exercised *in personam* jurisdiction over appellee.

■  Before a court in this state may exercise jurisdiction over a nonresident defendant it must appear that the nonresident's conduct was within the provisions of the state's long–arm statute, and that application of the statute to the nonresident would not violate the due process clause of the Fourteenth Amendment of the United States Constitution. *Monroeville Land Co., Inc. v. Sonnenblick–Goldman Corp. of Western Pa.*, 247 Pa.Super. 61, 371 A.2d 1326 (1977); *Action Industries, Inc. v. Wiedeman*, 236 Pa.Super. 447, 346 A.2d 798 (1975).

■  The long–arm statute in effect when appellants' actions were instituted provided in pertinent part:

## § 5322. Bases of personal jurisdiction over persons outside this Commonwealth

(a) General rule.–A tribunal of this Commonwealth may exercise personal jurisdiction over a person (or the personal representative of a deceased individual who would be subject to jurisdiction under this subsection if not deceased) who acts directly or by an agent, as to a cause of action or other matter arising from such person:

(1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for the purpose of this paragraph:

\*     \*     \*     \*     \*     \*

(b) Exercise of full constitutional power over nonresidents.–In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

Act of July 9, 1976, P.L. 586, No. 142, § 2, as amended, Act of April 28, 1978, P.L. 202, No. 53, § 10(61), 42 Pa.C.S.A. § 5322(a), (b) (Purdon's 1979 Pamphlet).

Since this statute makes the exercise of jurisdiction over a nonresident co–extensive with the permissible limits of due process, we need only decide whether it would be a denial of due process to hold appellee subject to suit in Pennsylvania. *Hart v. McCollum*, 249 Pa.Super. 267, 376 A.2d 644, 647 (1977).

In *Kingsley and Keith (Canada) Limited, et al. v. Mercer International Corp., et al.*, 284 Pa.Super. 524, 426 A.2d 618 (1980) (J. 1608/79), *The Union National Bank of Pittsburgh, Exec'r. v. L. D. Pankey Institute et al.*, 284 Pa.Super. 537, 426 A.2d 624 (1980) (J. 1740/79), and *Goff v. Ambrecht Motor Truck Sales, Inc., et al.*, 284 Pa.Super. 537, 426 A.2d 628 (1980) (J. 1620/79), three cases recently filed together, we evolved a two–step test for determining wheth-

er the exercise of this state's jurisdiction over a particular nonresident was constitutional. The first step is to apply the test formulated in *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 323 A.2d 11, 15 (1974), where we stated:

First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. *Hanson v. Denckla, supra,* [357 U.S. 235 [78 S.Ct. 1228, 2 L.Ed.2d 1283] (1958)]. Secondly, the cause of action must arise from defendant's activities within the forum state. *See Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374 (6th Cir. 1968); *Electric Regulator Corp. v. Sterling Extruder Corp.*, 280 F.Supp. 550 (D.Conn.1968). Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable. *International Shoe Co. v. Washington, supra,* [326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95] (1945)]; *see Southern Mach. Co. v. Mohasco Indus., Inc., supra,* [401 F.2d 374 (6th Cir. 1968)]; *see also In–Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220 (6th Cir. 1972); *Kourkene v. American BBR, Inc.*, 313 F.2d 769 (9th Cir. 1963).

If it appears that this test is not satisfied, the second step is to decide whether the non–resident defendant's activities in Pennsylvania unrelated to the cause of action were "continuous and substantial." *Bork v. Mills*, 458 Pa. 228, 329 A.2d 247 (1974). In deciding the present case, therefore, we shall proceed in this manner.

The first requirement of the *Proctor* test is that it must appear that the nonresident defendant has "purposefully availed itself of the privilege of acting within [Pennsylvania]." In the context of the present case, we must therefore decide whether by entering into employment agreements with appellants, appellee purposefully availed itself of the privilege of acting within Pennsylvania.

In *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Supreme Court offered

some guidance as to whether the forum state could exercise jurisdiction over a nonresident defendant that had entered into a contract the performance of which had effects in the forum state. There, a Texas insurance company sent an insurance contract to a California resident, who proceeded to send premiums from his home in California. Although the insurance contract was the insurance company's only connection with California, the Court held that the exercise of jurisdiction in that state was proper, since "[i]t is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with [California]." 355 U.S. at 223, 78 S.Ct. at 201.

*McGee* has spawned many decisions holding that where a nonresident defendant enters into a contract the performance of which will have significant effects in the forum state, the forum state may exercise jurisdiction over him. Thus, in *Bartholomew Associates, Inc. v. Townhome, Inc.*, 270 Pa.Super. 95, 410 A.2d 1266 (1979), we concluded that New Jersey had jurisdiction since the cause of action arose out of a contract that "contemplated, and indeed produced," significant effects in New Jersey. Slip op. at 9. In particular, we noted that the plaintiff had substantially performed the contract in New Jersey and that this performance was "central to the satisfactory outcome of the contract." Slip op. at 9. This decision was predicated on a series of New Jersey decisions holding that New Jersey had jurisdiction over a nonresident party to a contract where the nonresident anticipated or should have anticipated that the contract would produce "significant" effects in New Jersey. *See e. g., Avdel Corporation v. Mecure*, 58 N.J. 264, 277 A.2d 207 (1971); *Elizabeth Iron Works v. Kevin Construction Co.*, 155 N.J.Super. 175, 382 A.2d 648 (1976), *affirmed*, 75 N.J. 332, 382 A.2d 636 (1978); *Resin Research Lab., Inc. v. Gemini Roller Corp.*, 105 N.J.Super. 401, 252 A.2d 415 (1969). In *Proctor & Schwartz, Inc. v. Cleveland Lumber Co., supra*, this court held that Pennsylvania had jurisdiction over a Georgia corporation that had entered into a contract with a Pennsylvania corporation to buy goods to be manufactured

here. After noting the contract provided that it was to be governed by Pennsylvania law, 228 Pa.Super. 12, 323 A.2d at 15, we went on to say:

> When obligations entered into by a foreign corporation have a realistic economic impact on the commerce of this Commonwealth and where the defendant should reasonably have foreseen that the transaction would have consequences in this Commonwealth the defendant has purposefully availed itself of the privilege of acting within the Commonwealth.

*Id.*

*Accord Caesar's World, Inc. v. Spencer Foods Inc.*, 498 F.2d 1176 (8th Cir. 1974); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974); *In–Flight Devices Corp. v. Van Dusen Air, Inc., supra; Docutel Corp. v. S.A. Matra*, 464 F.Supp. 1209 (N.D.Tex.1979); *Development Direction, Inc. v. Zachary*, 430 F.Supp. 783 (S.D.N.Y.1976); *Graham Engineering Corp. v. Kemp Products Ltd.*, 418 F.Supp. 915 (N.D.Ohio 1976); *Tatham–Laird and Kudner, Inc. v. Johnny's American Inn, Inc.*, 383 F.Supp. 28 (N.D.Ill.1974). *Contra Lakeside Bridge & Steel v. Mountain State Const.*, 597 F.2d 596 (7th Cir. 1979) (plaintiff's performance of contract in forum state does not confer jurisdiction over nonresident defendant where contract did not require plaintiff to perform in forum state and defendant had no control over place of plaintiff's performance).

Since *Proctor & Schwartz, Inc. v. Cleveland Lumber Co., supra*, and, indeed, *Bartholomew Associates, Inc. v. Townhome, Inc., supra*, the Supreme Court has handed down *World–Wide Volkswagen Corporation, et al. v. Charles S. Woodson, District Judge of Creek County, Oklahoma, et al.*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) which, although entirely distinct factually from the case before us, offers additional insight into what is meant by the phrase, "purposefully avail [oneself] of the privilege of acting within the forum state." The Court stated that a defendant's "conduct and connection with the forum state [must be] such that he should reasonably anticipate being haled into court

there." [Citations omitted.] 444 U.S. at 297, 100 S.Ct. at 567. The Court stressed that it is the *defendant's* contacts with the forum state that confer jurisdiction over him, and not "the mere 'unilateral activity of those who claim some relationship with [him].'" 444 U.S. at 298, 100 S.Ct. at 567.

We do not believe that *World–Wide Volkswagen* undercuts either *Proctor* or *Bartholomew Townhome, Inc.* A nonresident defendant that enters into a contract that he knows will be substantially performed in the forum state should "reasonably anticipate being haled into court" in that state if any contractual problems develop. Nor does the fact that it is the *plaintiff* who performs in the forum state mean that jurisdiction is exercised "mere[ly]" because of the "unilateral activity of those who claim some relationship with [the defendant]." The essence of *Proctor* and, less explicitly, *Bartholomew Townhome, Inc.*, is that it is the *defendant's* act of entering into a contract that he knows will be substantially performed in the forum state [2] that constitutes the defendant's "purposefully avail[ing] itself of the privilege of acting within the forum state."

Given that both *Proctor* and *Bartholomew Townhome, Inc.*, have retained their vitality in light of *World– Wide Volkswagen*, we must determine whether appellants' duties in Pennsylvania produced "significant effects" or a "realistic economic impact" in this Commonwealth and whether appellee should have foreseen that this would be so when it entered into the employment agreements with appellants. As noted above, the complaints allege that appellants made frequent out–of–town trips on official business, including trips to Willow Grove and other points in Mont-

---

**2.** In *Lakeside Bridge & Steel v. Mountain State Const., supra*, cited above as *contra* to *Proctor, see* text pp. 11–12, the court noted that while the defendant's mere "belief" that the plaintiff would perform the contract in Wisconsin was not sufficient to warrant Wisconsin exercising jurisdiction over the defendant, the case might be different "if the contract required the plaintiff to perform in the forum state or if the nature of the plaintiff's contractual obligations made performance in the forum state necessary." 597 F.2d at 596 n. 13. Here, performance by appellants in Pennsylvania was a necessary part of their contract with appellee. *See* text pp. 14–15 *infra*.

gomery County, Pennsylvania, for the purpose of attempting to organize employees and to attend meetings as union trustees of the Boilermakers Medical Plan. The complaints also allege that appellants made 50 and 100 out–of–town trips, respectively, for which they did not receive the promised $75 allowance, although there is no indication of how many of these trips were to Pennsylvania. Thus, on their face the complaints suggest significant activity in Pennsylvania. We should be more persuaded of this conclusion, however, if we knew that this activity represented a substantial part of appellants' performance, *see Bartholomew Associates, Inc. v. Townhome, Inc., supra*, a conclusion that is not apparent from the complaints. Nevertheless, we choose not to remand this case to determine this question, *cf. Goff v. Armbrecht Motor Truck Sales, Inc., et al., supra* (remand to determine whether defendant had conducted "continuous and substantial" business activity in Pennsylvania), because of the nature of the contract involved here.

Often, in a contract involving two business strangers, one party may foresee that the other party will perform in the forum state, but unless the contract so specifies, cannot direct such performance. Here, however, appellee, as appellants' employer, not merely could foresee appellants' performance of the contract in Pennsylvania, but presumably directed appellants to perform here. Appellee's involvement with Pennsylvania was therefore more deliberate than that of a nonresident defendant that merely foresaw that the plaintiff might perform in Pennsylvania but did not direct such performance. Furthermore, by sending appellants into Pennsylvania to perform the tasks specified in the complaints, appellee necessarily "invok[ed] the benefits and protections of [this state's] laws." One may easily imagine many ways in which appellants' activities in this state might have resulted in appellee's need of the protection of this state's laws.

■ The second requirement of the *Proctor* test is that it must appear that "the cause of action [arose] from defendant's activities within [Pennsylvania]." We have little difficulty in concluding that it did. In *Proctor*, the nonresident

defendant refused to pay the Pennsylvania manufacturer because of defects in the manufactured goods. This court stated that "[t]he activity which satisfies the 'purposefully availed' test above is the entering into contractual obligations," and "[t]he cause of action arises from the breach of those same obligations." 228 Pa.Super. at 20, 323 A.2d at 15. *See In–Flight Devices Corp. v. Van Dusen Air, Inc., supra.* Here, appellee directed appellants to perform certain services in Pennsylvania, which was tantamount to appellee conducting those activities here itself. Appellants' cause of action against appellee was at least partially directed at appellee's failure to pay them for the services they performed here. The fact that appellee actually failed to pay appellants in New York does not mean that the cause of action did not arise from appellee's activities here. *See City of Philadelphia v. Bullion,* 28 Pa.Cmwlth. 485, 368 A.2d 1375, *appeal dismissed,* 434 U.S. 914, 98 S.Ct. 384, 54 L.Ed.2d 271 (1977) (New Jersey resident worked in Pennsylvania but did not pay wage tax; cause of action arose out of his activities in Pennsylvania).

The third, and final, requirement of the *Proctor* test is that it must appear that "the acts of the defendant . . . have a substantial enough connection with [Pennsylvania] to make the exercise of jurisdiction over it reasonable." In *World–Wide Volkswagen Corporation, et al. v. Charles S. Woodson, District Judge of Creek County, Oklahoma, et al., supra,* the Court enumerated several factors to be considered in determining whether the exercise of jurisdiction is reasonable, including the forum state's interest in resolving the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in the most efficient resolution of the controversy; and the interest of the several states in furthering substantive social policies. 444 U.S. at 6, 100 S.Ct. at 566. Here, appellants have a strong interest in obtaining relief in Pennsylvania, where similar causes of action will be tried against appellee's parent International. Any inconvenience to appellee will be minimal, given the proximity of New York and the fact that appellee will probably have to play a significant role in

appellants' suit against the International. Moreover, in *Action Industries, Inc. v. Wiedeman, supra,* we stated that "[m]ere inconvenience to the defendant is not sufficient to deny plaintiff the forum of his choice." (Citations omitted.) 236 Pa.Super. at 457, 346 A.2d at 803. Finally, the fact that the parties asserting jurisdiction here are nonresidents should not limit our jurisdiction, for as we stated in *Washington v. U. S. Suzuki Motor Corp.,* 257 Pa.Super. 482, 390 A.2d 1339 (1978), "we see no reason to accord nonresident litigants narrower rights than resident litigants have."

Having thus concluded that the *Proctor* test is satisfied here, we need not reach the question of whether appellee's activities in Pennsylvania unrelated to the cause of action were "continuous and substantial" enough to warrant exercising jurisdiction over it.[3] We do, however, believe it necessary to address the lower court's alternative holding, that even if it did have jurisdiction over appellee, it should decline to exercise it as an inconvenient forum.[4] In support of this holding, the court pointed out that the parties had overwhelming connections with New York, and that any Pennsylvania court deciding this case would have to apply New York law, which a New York court could do with greater expertise.

In *Plum v. Tampax,* 399 Pa. 553, 160 A.2d 549 (1960), the Supreme Court recognized the doctrine of *forum non con-*

**3.** We therefore do not reach the question of whether Pennsylvania can exercise jurisdiction over appellee because the International with which it is affiliated conducts activities in this state through Local Lodge No. 13 located in Bucks County. The lower court relied on Local Lodge No. 13's activities to find jurisdiction over the International. Slip op. 4–5.

**4.** Appellee did not plead *forum non conveniens* below, and therefore waived the issue. Nevertheless, the lower court considered whether it was a convenient forum because the present long–arm statute states that

[w]hen a tribunal finds that in the interest of substantial justice the matter should be heard in another forum, the tribunal may stay or dismiss the matter in whole or in part on any conditions that may be just.

Act of July 9, 1976, P.L. 586, No. 142, § 2, as amended, Act of April 28, 1978, P.L. 202, No. 53, § 10(61), 42 Pa.C.S.A. § 5322(e) (Purdon's 1979 Pamphlet).

*veniens*, that is, that a court may decline to exercise jurisdiction where the litigation can more appropriately be conducted in another forum. The Court stated that two key factors must be considered by a court before declining jurisdiction on this ground: "(1) that since it is for the plaintiff to choose the place of suit, his choice of forum should not be disturbed except for weighty reasons, and (2) that the action will not be dismissed in any event unless an alternative forum is available to the plaintiff." 399 Pa. at 560–561, 160 A.2d at 553. In *Daugherty v. Inland Tugs Company*, 240 Pa.Super. 527, 359 A.2d 465, 466 (1976), this court stated:

> Important considerations in this area are the relative ease of access to the sources of proof; the availability of compulsory process for the attendance of unwilling witnesses; the possible need for a view of the premises, if such would be appropriate to the action; and all other practical problems that make trial of a case expeditious and inexpensive. The ends of justice are not served by allowing a suit to be litigated in a forum where on balance, unnecessary hardship and inconvenience would be cast on one party without compensatingly fair convenience to the other parties and where suit might be more conveniently litigated in another forum available equally to both parties.

Here, the reasons cited by the lower court for declining jurisdiction were not weighty enough to disturb appellants' choice of forum. As we have noted, appellee did have connections with this state, in addition to those it had in New York. Moreover, the courts of this state regularly interpret the laws of other jurisdictions. In itself the requirement to interpret the laws of another jurisdiction should not cause a court to hesitate to exercise jurisdiction over the parties. Finally, the lower court did not point out any particularly difficult problems in litigating the case here.

Reversed.

CAVANAUGH, J., files a dissenting opinion.

CAVANAUGH, Judge, dissenting:

Because in my opinion the majority errs in interpreting the complaints and errs in applying the law, I dissent.

The plaintiffs are citizens of New York and the defendant, union local, is an unincorporated association with its principal office located in New York. The plaintiffs seek to recover certain amounts allegedly due them under an employment contract which was negotiated and substantially performed in New York. They allege that the defendant failed to pay, inter alia, the amount due them for "out of town" trips. Both plaintiffs do not know how many such trips were not adequately paid for, but one "reasonably believes" there were 50 such trips; the other "reasonably believes" there were 100 trips. Of these 50 and 100 trips neither plaintiff has specified how many such trips were to Pennsylvania. For all we know, plaintiffs could have gone to Pennsylvania twice. Nevertheless, the majority states that "on their face the complaints suggest significant activity in Pennsylvania," Majority Opinion, *ante* at 642. I respectfully suggest that such a statement misinterprets the complaints.[1]

Despite the uncertainty of the number of trips in Pennsylvania and the possibility that the actual number may be

1. Brommage's complaint alleges:

13. During the time that Plaintiff was employed, he made frequent trips out of town on official business for [defendants], . . . including trips to Willow Grove, Pennsylvania, and other points in Montgomery County for the purpose of attempting to organize employees and to attend meetings as a union trustee of the Boilermakers Medical Plan. . . . Plaintiff does not now know how many such out–of–town trips he made in the course of his employment but reasonably believes there to have been at least 50 such trips since February 14, 1977, for which he was not reimbursed.

Koenig's complaint alleges:

20. During the time that Plaintiff was employed, he made frequent trips out of town on official business for [defendants] . . . including trips to Willow Grove, Pennsylvania, and other points in Montgomery County for the purpose of attempting to organize employees and to attend meetings as a union trustee of the Boilermakers Medical Plan and the Boilermakers Pension Plan. . . . Plaintiff does not know how may such out–of–town trips he made in the course of his employment, but reasonably believes there to have been at least 100 such trips since July 27, 1972.

quite small, the majority decides that Pennsylvania has personal jurisdiction over the defendant union local and that Pennsylvania courts should not decline to exercise jurisdiction on the basis of *forum non conveniens*. I agree with the lower court that even if Pennsylvania has personal jurisdiction over the local union, the court should decline to exercise its jurisdiction under the doctrine of *forum non conveniens*. Thus, I find it unnecessary to discuss the issue of personal jurisdiction even though I also disagree with the majority's view of that issue.

The lower court held that under 42 Pa.C.S.A. § 5322(e) Pennsylvania was not a proper forum for this case. Although 42 Pa.C.S.A. § 5322(e) does not explicitly refer to the doctrine of *forum non conveniens*,[2] the considerations which govern the applicability of *forum non conveniens* are relevant when the court applies 42 Pa.C.S.A. § 5322(e). *See Washington v. May Department Stores*, 388 A.2d 484 (D.C. App.1978) (court used forum non conveniens criteria in applying D.C.Code 1973 § 13–425, which is substantially similar to 42 Pa.C.S.A. § 5322(e)).

The lower court's decision that it should decline jurisdiction under the doctrine of *forum non conveniens* will be reversed only if the decision constitutes an abuse of discretion. *Plum v. Tampax*, 402 Pa. 616, 618, 168 A.2d 315 (1961). In my opinion the lower court did not abuse its discretion in declining jurisdiction.

In deciding whether a court should decline jurisdiction, the interest of the parties and the interest of the public must be considered. *Plum v. Tampax*, 399 Pa. 553, 160 A.2d 549 (1960). Here the plaintiffs are citizens of New York, the defendant union local is an unincorporated association which was organized in New York and which has its principal place of business in New York; and the contract was negotiated and substantially performed in New York. Moreover, ap-

**2.** 42 Pa.C.S.A. § 5322(e) provides:
(e) Inconvenient forum.—When a tribunal finds that in the interest of substantial justice the matter should be heard in another forum, the tribunal may stay or dismiss the matter in whole or in part on any conditions that may be just.

parently at least some of defendant's witnesses would be required to travel from New York to Pennsylvania. Under these circumstances, the interest of the parties weighs in favor of litigation elsewhere.

Factors relevant to the public interest were enunciated by our Supreme Court in *Plum v. Tampax*, 399 Pa. 553, 160 A.2d 549 (1960):

> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. There is an appropriateness, too, in having the trial * * * in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Id.*, 399 Pa. at 561–62, 160 A.2d at 553.

Here, since the plaintiffs performed some of their work in Pennsylvania, Pennsylvania has some relation to the litigation. However, the relation of the instant case to New York is very substantial compared to the relation to Pennsylvania. The plaintiffs seek damages for the alleged failure of the defendants to pay them the proper wages and benefits for every day they worked. Plaintiff Brommage claims he worked 345 days, of which 50 were out of town; plaintiff Koenig claims he worked 1824 days, of which 100 were out of town.[3] The number of these out of town trips which were in Pennsylvania is not stated in the complaints. Both in terms of the amount of days worked in New York as

---

3. I conclude this from the allegations in the complaints, including the demand for damages. Brommage is claiming to have worked from February 14, 1977 to May 25, 1978, 67 weeks; 67 weeks × 5 days/week = 335; on 10 occasions he alleges he worked 6 days/week, 335 + 10 = 345; of these 345 days he alleges about 50 days were out of town. Similarly, Koenig claims to have worked from July 27, 1972 to May 25, 1978, 304 weeks; during this time he alleges he worked 6 days/week, 304 weeks × 6 days/week = 1824; of these 1824 days he alleges about 100 days were out of town.

compared to those worked outside New York and in terms of the amount of damages claimed to be attributable to work in New York as compared to the amount of damages attributable to work outside New York, the relation to New York is substantial. Moreover, New York law would apply here.

The substantial relation to New York and slight relation to Pennsylvania and the requirement that a Pennsylvania court interpret and apply New York laws convince me that the public interest favors litigation elsewhere.

Considering both the interests of the parties and the public as *Plum v. Tampax*, 399 Pa. 553, 160 A.2d 549 (1960), mandates, I believe there are sufficient reasons to disturb plaintiff's choice of forum and I cannot say the lower court abused its discretion. Therefore, I would affirm.[4]

---

4. The lower court dismissed the action against the local union. Dismissal under the doctrine of *forum non conveniens* is proper as long as there is an alternative forum available to the plaintiff. *Plum v. Tampax, supra.* In voting to affirm I assume the existence of an alternative forum. New York would probably be an alternative forum.