**Evelyn M. FELTY**

v.

**CONAWAY PROCESSING EQUIPMENT CO., Linco Holland Engineering and Lindholst Company A/S.**

Civ. A. No. 89-4929.

United States District Court,
E.D. Pennsylvania.

May 30, 1990.

Mary Ann Knight, Philadelphia, Pa., for Evelyn M. Felty.

Edward A. Greenberg, Philadelphia, Pa., for defendant Conaway.

Joyce B. Klemmer, Atlanta, Ga., and John J. Murphy, III, Philadelphia, Pa., for defendant Linco.

Gwenellen P. Janov and Stephen H. Orel, New York City, for defendant Lindholst.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

### BACKGROUND

This matter arises under the diversity jurisdiction of this court, 28 U.S.C. § 1332. Plaintiff, Evelyn M. Felty, a Pennsylvania resident, alleges that she was injured at her place of employment in the District of this Court by a poultry processing machine manufactured in Holland by third-party defendant Linco Holland Engineering, B.V., ("Linco Holland"), a Dutch corporation. The machine was sold by Linco Holland to third-party defendant Lindholst and Company A/S, ("Lindholst"), a Danish corporation, which was Linco Holland's sole worldwide distributor. Lindholst in turn sold the machine to defendant Conaway Processing Equipment Company, ("Conaway Equipment"), a Delaware Corporation, which had been engaged by Lindholst to distribute Linco Holland products in the United States. Conaway Equipment sold the machine to plaintiff Felty's Pennsylvania employer.

Plaintiff Felty originally brought this action against Conaway Equipment, which joined Linco Holland and Lindholst as third-party defendants. Lindholst also filed a cross-claim against Linco Holland. Linco Holland answered Conaway Equipment's Third-party Complaint on November 8, 1989 and Lindholst's Cross-claim on January 30, 1990. In both Answers, Linco Holland raised the defense of this Court's lack of personal jurisdiction over Linco Holland, due to insufficient contacts with Pennsylvania.

On March 19, 1990, Linco Holland moved to dismiss Conaway Equipment's Third-party Complaint and Lindholst's Crossclaim for lack or personal jurisdiction under Fed. R.Civ.P. 12(b)(2). Conaway Equipment and Lindholst have filed a joint memorandum in opposition to the motion and Linco Holland has filed a reply brief.

DISCUSSION

Under Fed.R.Civ.P. 12(b), a motion to dismiss for lack of personal jurisdiction must be filed before the Answer is filed. In this case, the Motion was filed four months after the Answer to Conaway Equipment's Third-party Complaint and a month and a half after the Answer to Lindholst's Cross-claim. "[T]he conclusion seems inescapable that the duty devolves upon the court 'at any time' the jurisdictional question is presented to proceed no further until that question is determined." *Page v. Wright*, 116 F.2d 449, 453 (7th Cir.1940). The defense of lack of personal jurisdiction, and if not waived, can be raised at any time. *Keil Lock Co. v. Eagle Hardware Manufacturing Co.*, 16 F.R.D. 388 (S.D.N.Y.1954). Pursuant to Fed.R. Civ.P. 12(d), the jurisdictional issue may, upon application of any of the parties, be decided before trial. Since the defense of lack of personal jurisdiction was raised in both answers, it was not waived. *Keil Lock Co., supra.* Therefore, we will consider the Motion on its merits.

Under Fed.R.Civ.P. 4(e), a federal court may assert personal jurisdiction over nonresident defendants to the extent allowed by the law of the state in which the court sits. The Pennsylvania long-arm statute, 42 Pa.C.S.A. § 5322(a)(4), confers jurisdiction for "Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth", and further, at § 5322(b) provides:

> In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons ... to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

Pennsylvania courts have recognized that this provision renders the reach of the long-arm statute coextensive with that permitted by the due process clause of the United States Constitution. *See, e.g., Koenig v. International Brotherhood of Boilermakers*, 284 Pa.Super. 558, 426 A.2d 635 (1980). However, the interpretation of the United States Constitution by Pennsylvania Courts does not bind federal courts. We must therefore assess the constitutionality of exercising jurisdiction over a foreign defendant according to federal law. *Empire Abrasive Equipment v. H.H. Watson, Inc.*, 567 F.2d 554, 556 n. 1 (3d Cir.1977).

The basic factors for determining whether the exercise of jurisdiction over a nonresident defendant is proper were set out in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). That case held that due process is satisfied when a nonresident defendant has such minimum contacts with the forum state "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316, 66 S.Ct. at 158.

The "minimum contacts" test does not allow for mechanical application. In applying the test, the facts must be weighed to see whether the requisite "affiliating circumstances" are present. Few answers "will be written in black and white. The greys are dominant and even among them the shades are innumerable." *Kulko v. Superior Court of California*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978).

Important factors in determining whether this test has been met are the quality of the contacts between the defendant and the forum state, *see McGee v. International Life Insurance Company*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, (1957), whether the cause of action flows from the contact or contacts, and whether the defendant has purposefully availed himself of the privilege of conducting activities in the forum state. *See Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The test for the foreseeability of a tort is whether "defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). These concepts have been further refined in *Asahi Metal Industry Co. v.*

*Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92, on which Linco Holland heavily relies. As the Court said in *Asahi:*

The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum state, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state.

After reviewing the exhibits, affidavits and memoranda submitted in support of and in opposition to the Motion to Dismiss, we believe that the facts in this case are significantly distinguishable from the facts in *Asahi.* We further hold that defendant Linco Holland has done more than merely place the machine into the stream of commerce, and that the something more is sufficient to be considered as acts purposefully directed toward Pennsylvania.

In *Asahi,* the plaintiff had been injured and his wife killed in a motorcycle accident allegedly caused by a defective tire. The tube in the tire was manufactured in Taiwan. Asahi, a Japanese manufacturer, had sold the tire valve to the Taiwanese manufacturer of the tube. So far as the Supreme Court opinion shows, Asahi's tire valves were not advertised in the United States, nor were they sold separately from assembled tubes. In the posture in which the case reached the Supreme Court, all defendants except Asahi had settled. The case deals with two issues: first, whether there were sufficient contacts with the forum state, and second, whether, assuming that there were sufficient contacts, it

would be fair for Asahi to be forced to defend itself in the courts of California.

The Court found, that on the facts given above, there were not sufficient contacts. It also found that defendant Asahi, as the supplier of only a component of the allegedly defective tire assembly, and as the only remaining defendant in the case, could not fairly be forced to trial in California, even if there had been sufficient contacts.

In the instant case, it is unquestionably true that Linco Holland had few, if any, direct contacts with the Commonwealth of Pennsylvania. On the other hand, the record before us shows that Linco Holland clearly and purposefully used Lindholst and Conaway Equipment to deal in the international market for poultry processing equipment. The record also shows that Linco Holland was well aware that its equipment was being sold for use in the United States, including Pennsylvania.

With regard to the issue of "purposefully directing" its product toward the Commonwealth of Pennsylvania, we will examine Linco Holland's relationship with Lindholst and its actions regarding the market for its products in the United States.

Lindholst was more than a mere purchaser for value of Linco Holland machines and, in effect, acted as Linco Holland's agent. Lindholst placed advertisements bearing the Linco Holland name in trade publications circulated throughout the United States, including Pennsylvania. Linco Holland's original name, Tieleman B.V., representing the name of its principals, was changed in 1984 to Linco (standing for *Lin*dholst and *Co*mpany) Holland so that its products could be perceived on the world market as part of Lindholst's Linco Holland line.

Linco Holland maintained a list showing the locations in the United States where it machines had been installed. While Conaway Equipment had originally been engaged by Lindholst, the record nevertheless contains a good deal of direct correspondence concerning equipment orders between Conaway Equipment and Linco Holland. For two years, May 1982 until November 1984, in an effort to improve Unit-

ed States sales, Linco Holland dealt directly with Conaway Equipment, by-passing Lindholst, even though Lindholst continued to receive commissions on those sales. There were United States patents on some of the Linco Holland machines. While Linco Holland's managing director, Rudolf Tieleman, disclaimed having knowledge about poultry processing plants in Pennsylvania, the record shows a listing of 46 such plants in Pennsylvania, a significant part of the total of approximately 350 poultry processing plants in the United States. Linco Holland sold poultry processing machines to at least one other customer in Pennsylvania, and this was after a meeting in Amsterdam, Holland, between representatives of Linco Holland and the customer.

On these facts, we are compelled to find that Linco Holland did much more than just placing its machines in the stream of commerce. Through Lindholst, its sole international marketing agent, Linco Holland purposefully directed its machines toward the United States, one of which, Pennsylvania, plays a significant role in the poultry processing industry. Under all the circumstances, Linco Holland should reasonably have expected to be haled into court in Pennsylvania to defend against alleged defects in its products.

With regard to the issue of fairness, there are a number of differences between this case and *Asahi*. To begin with, Linco Holland did not manufacture a minor component of the allegedly defective machine, rather, it designed and manufactured the whole machine. At the present time, all known potential defendants are before the court. Both Lindholst, Linco Holland's chosen international sales agent, and Conaway Equipment, Lindholst's United States sales agent, have accepted the jurisdiction of this court. Linco Holland has already provided discovery in this case, and its managing director, Rudolf Tieleman, has given a deposition in the United States. Mr. Tieleman appears to speak excellent English. Linco Holland is ably represented before this court by prominent local counsel, who should be fully competent to represent its interests and to minimize inconvenience.[1] Based on these facts, we find that considerations of fairness and of speedy and economical resolution of all the issues dictate retaining Linco Holland as a third-party defendant in this case.

CONCLUSION

We find that Linco Holland has sufficient contacts with the Commonwealth of Pennsylvania to support the assertion of the jurisdiction of this court. We further find that retaining Linco Holland as a third-party defendant in this matter will be fair to Linco Holland and will promote the speedy and efficient resolution of the issues in this case. Consequently, Linco Holland's Motion to Dismiss will be denied.

---

1. The record shows that both Linco Holland and Lindholst have been represented by the Atlanta firm of Smith, Gambrell & Russell. The Smith firm did not enter an appearance in this matter because of the apparent conflict of interest between its clients, but did act informally to protect the interests of both Linco Holland and Lindholst until independent counsel could enter appearances.