**Donald R. REES, Appellant,**

v.

**MOSAIC TECHNOLOGIES, INC.**

No. 83–5738.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
June 15, 1984.

Decided Aug. 29, 1984.

Anthony A. Seethaler, Jr., Bridgeville, Pa., for appellant.

James C. Larrimer, Dougherty, Larrimer & Lee, Pittsburgh, Pa., for appellee.

Before SEITZ and ADAMS, Circuit Judges, and STEWART, Justice *.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This is a case of first impression presenting the issue whether the pre-incorporation actions of a promoter of a corporation, when coupled with post-incorporation ratification by the corporation, may suffice to justify the exercise of in personam jurisdiction over the corporation in the state of the pre-incorporation activities.

### I.

Donald Rees, a citizen of Pennsylvania, brought suit in the District Court for the Western District of Pennsylvania against Mosaic Technologies, Inc. (Mosaic), a company incorporated under the law of Delaware with its principal place of business in New Hampshire. Rees sought declaratory and injunctive relief, as well as an accounting and damages, stemming from Mosaic's alleged breach of an oral personal service contract. Jurisdiction was based on diversity. 28 U.S.C. § 1332. The district court, 570 F.Supp. 31 (W.D.Pa.1983) dismissed the complaint on the ground that Rees had not alleged facts sufficient to establish in personam jurisdiction over the defendant under Pennsylvania law. Rees appealed and we now reverse and remand.

* Honorable Potter Stewart, Associate Justice (Retired) of the Supreme Court of the United States, sitting by designation.

The basis of in personam jurisdiction over Mosaic in Pennsylvania turns exclusively on a series of pre-incorporation activities in that state, followed by post-incorporation ratification. Rees avers that in November, 1982, he entered into an oral contract in Pennsylvania with Frank Williams, a promoter and later first chief executive officer of Work Stations, Inc. This corporation later became Mosaic, the appellee. Under the contract Rees was to provide "competitive information," App. at 5, such as facts concerning other businesses, and general business contacts. Rees was also to recruit, under an exclusive search contract, personnel to fill the high-level managerial positions at the corporation. Williams, who transacted most of the business with Rees, was a resident of Pennsylvania at the time of contracting and remained so until after the actual incorporation of Mosaic. In February, 1983, when it became apparent that Williams would not continue as Chief Executive Officer for any extended period after incorporation, he commissioned Rees to recruit a candidate to replace Williams as president.

Until April, 1983, Williams utilized Rees' office and resources in Pittsburgh in order to keep expenses to a minimum during the search for venture capital for the business. Between November, 1982 and April, 1983, Rees held conversations at his office with Williams and Douglas Calloway, another founder of the corporation.

The company was incorporated on April 6, 1983 as Work Stations, Inc., and on May 6, 1983, its name was changed to Mosaic Technologies, Inc. In mid-April, James Marshall, a third founder of Mosaic, replaced Williams as chief executive officer. From that point until May 16, 1983, Marshall, from his office in New Hampshire, allegedly assured Rees by telephone that Rees would retain the exclusive recruitment contract. Rees continued to provide the corporation with "competitive information" in response to telephoned requests from Marshall. App. at 31. On April 19, 1983, Marshall approved payment with a Work Stations, Inc. check of an invoice dated April 15, 1983, submitted by Rees in connection with his services.

On May 16, 1983, however, Marshall informed Rees that he, Rees, would not retain the exclusive recruitment contract and indeed would not have a contract to recruit for any further positions at Mosaic. Rees claims that he had already recruited for several of the positions for which he had had a contract.

The district court, after affording Rees an opportunity to allege sufficient factual contacts between Mosaic and the forum State in order to establish personal jurisdiction over the corporate defendant, dismissed the complaint. The court was of the view that pre-incorporation activities of the promoters of a corporation may not be ascribed to the corporation, inasmuch as the corporation does not yet exist. Such pre-incorporation activities of promoters may not, the argument goes, provide the minimum contacts necessary for the exercise of in personam jurisdiction. After rejecting Rees' contention that Mosaic's later ratification of pre-incorporation activities occurring in Pennsylvania subjects the defendant to suit in Pennsylvania, the district court held that Mosaic's post-incorporation activities were inadequate to establish jurisdiction.

## II.

Federal courts sitting in diversity apply state substantive law and federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Rule 4(e) of the Federal Rules of Civil Procedure, governing in personam jurisdiction, directs a federal court to follow state law by allowing a district court to assert personal jurisdiction over a nonresident to the extent permissible under the law of the state in which the district court sits, in this case Pennsylvania. Pennsylvania law, specifically its long arm statute, 42 Pa.Stat. Ann. § 5322(b) (Purdons 1981), authorizes a court to exercise jurisdiction over a person "to the fullest extent allowed under the Constitution of the United States and [that jurisdiction] may be based on the most

minimum contact with this Commonwealth allowed under the Constitution of the United States." The reach of the Pennsylvania statute is thus coextensive with the scope of personal jurisdiction permitted by the due process clause of the United States Constitution. *Koenig v. International Bhd. of Boilermakers,* 284 Pa.Super. 558, 567, 426 A.2d 635, 639 (1980). We therefore must assess the constitutional permissibility of the exercise of jurisdiction over the foreign corporation in this case.

■ Consonant with due process, personal jurisdiction may be asserted over a nonresident corporation so long as there exist "minimum contacts" between the corporation and the forum state. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The defendant corporation's conduct and connection with the forum State must be of such a nature that the corporation "should reasonably anticipate being haled into court there." *World-Wide Volkswagon Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). This limitation on personal jurisdiction lends predictability to the legal system by permitting potential defendants to structure their conduct with at least some assurances as to where that conduct may render them liable to suit. *Id.*

In light of these constitutional standards of due process, the courts in Pennsylvania have established a three-prong analysis for the exercise of personal jurisdiction:

> The defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws .... The cause of action must arise from defendant's activities within the forum state .... Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable.

*Procter & Schwartz v. Cleveland Lumber Co.,* 228 Pa.Super. 12, 19, 323 A.2d 11, 15 (1974).

Were the issue before us based solely on the post-incorporation activities of Mosaic, which occurred primarily in New Hampshire, we would agree with the district court that there were insufficient contacts with Pennsylvania to provide a basis for personal jurisdiction. Mosaic's post-incorporation activities so far as contact with the forum State is concerned, include only the telephone calls between Marshall in New Hampshire and Rees in Pennsylvania allegedly assuring Rees of the validity of the recruitment contract, the request by Marshall for "competitive information," and the payment in April of Rees' invoice with a Work Stations check. These activities constitute far less direct contact with Pennsylvania than that exhibited, for example, in this Court's recent statement on jurisdiction, *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61 (3d Cir.1984). In *Time Share,* the defendants, citizens of Maryland, were held to have had insufficient contact with Pennsylvania under the *Procter* test. The defendants had placed an advertisement in a Philadelphia newspaper to promote their services, sent an airplane into Pennsylvania to bring potential customers to Maryland, and had entered into a contract containing a Pennsylvania choice of law provision. Such contacts were held not to amount to an "act for or by which [the defendants] could reasonably expect to be haled into court in Pennsylvania." *Id.,* 735 F.2d 65. This type of analysis would similarly govern Mosaic's post-incorporation activities.

■ We disagree, however, with the district court's conclusion that *pre-incorporation* activities may not be considered in the jurisdictional calculus. Although there is no caselaw governing jurisdiction predicated on pre-incorporation activities, there are nonetheless parallel considerations of pre-incorporation activities that inform todays decision. Thus, while it is true that in general a corporation does not exist as a legal entity until incorporated, and therefore cannot have agents before its organization, *see* 18 Am.Jur.2d Corporations § 119 (1965), the pre-incorporation activities of a promoter may form the basis for

corporate liability when they have been ratified by post-incorporation acts of the corporation. *Harnett v. Ryan Homes, Inc.,* 360 F.Supp. 878, 893 (E.D.Pa.1973), *aff'd,* 496 F.2d 832 (3d Cir.1974); *McCloskey v. Charleroi Mt. Club,* 390 Pa. 212, 216–17, 134 A.2d 873, 876 (1957); *see also* 1A Fletcher Cyclopedia Corporations, Ch. 9, §§ 205, 207, 212 (1983). The acts of ratification relate back to the time of the original activities and establish an agency relationship permitting the acts of the promoter to constitute, in effect, acts done by the corporation. 3 Am.Jur.2d Agency § 160; *cf. Comprehensive Group Serv. Bd. v. Temple U.,* 363 F.Supp. 1069 (E.D.Pa.1973). In another context this Court has stated that "[r]atification of an act purported to be done for a principal by an agent is treated as effective at the time the act was done." *In re Eastern Supply Co.,* 267 F.2d 776, 778 (3d Cir.), *cert. denied,* 361 U.S. 900, 80 S.Ct. 208, 4 L.Ed.2d 156 (1959).

Given that liability of the corporation may be based on pre-incorporation acts, and that such liability relates back in time to the original act, we see no reason why a corporate defendant could not reasonably anticipate being sued in the state where that liability is incurred. When the defendant has availed itself of the privilege of acting in the forum State, the burden in permitting suit there is not an undue one. Thus under the basic notions of *World-Wide Volkswagon,* it would seem permissible to consider in the jurisdictional decision pre-incorporation acts that are subsequently ratified by the corporation.

The district court relied on *Bonner v. Travelers Hotel, Inc.,* 276 Pa. 492, 120 A. 467 (1923), to reach the contrary result. *Bonner* is inapposite, however, since it involved a contract made by a single promoter that was immediately and expressly repudiated upon incorporation. The Pennsylvania court stated that a corporation may assume liability for a promoter's contract if originally made with authority and subsequently ratified. *Id.* at 496, 120 A. at 468. In the case of Mosaic the promoters who dealt with Rees and later ratified the contract were acting with authority; at all

relevant times each held the position of president or chief executive officer of the corporation.

When the pre-incorporation acts of the promoters are considered in conjunction with the post-incorporation acts set forth above, we hold that there were sufficient contacts with Pennsylvania to justify the exercise of in personam jurisdiction under the three-prong test enunciated in *Proctor, supra* p. 768. The first prong of the *Proctor* test is satisfied when the defendant has entered into a contract that it knows will be performed substantially in the forum state. Although it is the plaintiff that may actually perform under the contract in the forum state, the defendant purposely avails itself of the privilege of acting in the forum State by knowingly entering such a contract. Williams, a resident of Pennsylvania, entered into a contract with Rees in November, 1982, and the contract was to be performed within Pennsylvania. The defendant corporation could thus reasonably anticipate litigation in the forum state. *Koenig v. International Bhd. of Boilermakers,* 284 Pa.Super. at 571, 426 A.2d at 641–2.

Under the second prong set forth in *Proctor,* the cause of action arose directly from Mosaic's activities within Pennsylvania because the suit is for the breach of the contract that the precursor to the corporation entered into in Pennsylvania. Under the final prong, the exercise of jurisdiction over Mosaic is both fair and reasonable in view of the legitimate interests of the forum state. *See Proctor,* 228 Pa.Super. at 20, 323 A.2d at 16. Pennsylvania has an interest in ensuring that contracts made and to be performed in Pennsylvania are not breached, and in providing its citizens a forum when such contracts are broken.

### III.

Under the circumstances of this case, we hold that the pre-incorporation activities of the promoters later ratified by the corporation may be considered in evaluating in personam jurisdiction. Accordingly, the

judgment of the district court will be vacated and the case remanded for proceedings consistent with this opinion.