FFOC COMPANY, a Michigan Limited Partnership, and Lynn W. Ledford, Individually, Plaintiffs,

v.

INVENT A.G., a Foreign Corporation, Cemix A.G., a Foreign Corporation, Jorg von Schwabe, and Jurik Kulakowski, Individually, Foreign Residents, Defendants.

No. 92–CV–75225–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 21, 1994.

Arnold S. Weintraub, Weintraub, Duross & Brady, Bingham Farms, MI, for plaintiffs.

Suzanne Sahakian, Dykema Gossett PLLC, Detroit, MI, for defendants.

Samuel Shepard Jones, Jr., Metzger, Hollis, Gordon & Mortimer, Washington, DC, of counsel, for defendants Invent, A.G., Cemix A.G., and Jorg von Schwabe.

## OPINION

GILMORE, District Judge.

This declaratory action involves a patent assignment and ownership dispute by one partner, Lynn Ledford ("Ledford"), a Michigan resident, against two of his three original partners, Defendants Jorg von Schwabe ("von Schwabe"), a resident of Hamburg, Germany, and Jurik Kulakowski ("Kulakowski"), a German domiciliary. The fourth partner, who is not named in the lawsuit, is Zygmet Stepien ("Stepien"), an Indiana resident. As a result of their dispute, Plaintiffs Ledford and his company, FFOC Company ("FFOC") commenced this action against Defendants von Schwabe and Kulakowski,[1] as well as two corporate entities, Invent A.G. ("Invent") and Cemix A.G. ("Cemix").

The statement of facts provided by Defendants varies considerably from that of Plaintiffs. This summary of the facts is an amalgamation of both Plaintiffs' and Defendants' statements.

Apparently, Lynn Ledford, Jurik Kulakowski, Jorg von Schwabe, and Zygmet Stepien had negotiations in the Fall of 1988 and agreed to formalize their proposed business project to develop and market throughout the world a new air filter for automobiles. Defendants assert, and Plaintiffs do not dispute, that Filtrona, a Michigan limited partnership, was formed to be in charge of marketing the air filter in North America, particularly to the "Big Three" automobile manufacturers in Detroit, Michigan. Filtrona was first organized in November 1988.

According to Plaintiffs, Ledford's Michigan corporation, Bycan–Sellen of Michigan, contracted with individuals Robert Gielow and James Paul, through their company, Airflow Sciences, Inc., located in Livonia, Michigan, to design an air filter primarily for filtering air entering the passenger compartment of a car.

Plaintiffs assert that prior to the formation of Filtrona, von Schwabe and Kulakowski approached Ledford and Stepien about investing in Filtrona, through Cemix. Plaintiffs further assert that the negotiations for the participation of von Schwabe and Kulakowski took place face-to-face in Michigan, as well as through multiple communications, written and oral, between Michigan and Germany. Filtrona subsequently changed its name to FFOC Company.

In January 1989, Invent A.G. was formed as a Liechtenstein corporation, and it was agreed that Invent would own the invention and the patents issuing thereon. Ledford, Stepien, Kulakowski and von Schwabe were equal shareholders (25% each) in the new corporation.

The patent application was filed in March 1989. On the application, Gielow was named as the "first inventor" and Paul was named as the "second joint inventor." Plaintiffs assert that "Ledford, pursuant to the agreement negotiated in November 1988, had Gielow and Paul assign the patent application to Invent A.G." Plaintiffs' Brief at 2.

Defendants note that the Assignment, which was prepared by Plaintiffs' counsel at the time, Arnold Weintraub, was signed by Gielow and Paul in Michigan, and was given "in consideration of the sum of One Dollar ($1.00) *and other good and valuable considerations, receipt whereof is hereby acknowledged.*" Defendants' Brief at 3. (emphasis in original).

According to Defendants, Arnold Weintraub and his firm represented all four air filter business investors at that time (Led-

---

1. Defendants assert, and Plaintiffs have not refuted, that Kulakowski has not been properly served with the second amended complaint.

ford, Stepien, Kulakowski and von Schwabe). Weintraub's office prepared and prosecuted the patent application for the air filter, which was then filed with the Patent and Trademark Office on behalf of Invent in Washington, D.C. in April 1989.[2] In March 1991, the Patent Commissioner awarded Patent Number 5,002,597 to Invent A.G., representing the air filter invention. Defendants contend, and this is where Defendants and Plaintiffs disagree, that the four investors originally discussed the terms by which Invent would grant a license to Filtrona for the manufacture and exploitation of the patent in North America for a license fee and payment of a royalty. According to Defendants, "no agreement was reached and since then, the interests of FFOC and INVENT have been in conflict." Defendants' Brief at 4.

Plaintiffs contend that Filtrona filed the original application in the United States and paid all the fees and costs of prosecuting the application. Additionally, and as agreed upon, Filtrona filed applications in Canada, Australia, Japan, Mexico, Brazil, and North Korea. Additionally, Filtrona paid the costs to develop and produce equipment to manufacture the air filter. Further, Filtrona expended large amounts of money to market the filter. Plaintiffs maintain that all of the above expenditures were made in reliance on the agreements between the air filter investors, namely that Filtrona would receive an exclusive license to develop and market the invention throughout the world, except for Europe, which was to be Defendants' territory.

Furthermore, Plaintiffs contend that after the patent was issued, "it was discovered through diligence that Robert Nelson, an employee of Airflow Sciences, and Ledford himself, had contributed to the claimed invention and should have been named as inventors." Plaintiffs' Brief at 3.

**2.** On March 28, 1994, Defendants Invent, Cemix and Jorg von Schwabe filed both a Motion to Dismiss and a Motion to Disqualify Arnold S. Weintraub and the Law Firm of Weintraub, Du-Ross & Brady From Representing Plaintiffs. Plaintiffs filed briefs in opposition to the motions on April 22, 1994 and April 21, 1994, respectively. At a hearing held on May 16, 1994, the court granted defendants' motion to disqualify. The

Plaintiffs allege that this cause arises out of the dispute between the investors and the accompanying failure to grant the license as well as the discovery of the error in inventorship. Plaintiffs are seeking specific performance of the agreement or, in the alternative, to rescind the agreement and declare the assignment null and void. In addition, Plaintiffs seek an order enabling the correction of the inventorship.

In their motion to dismiss which was filed on March 28, 1994, Defendants contend that (1) this court lacks jurisdiction over the subject matter of this action, (2) this court lacks personal jurisdiction over them, (3) venue in this judicial district is improper under 28 U.S.C. § 1391(a), (4) mandatory joinder of the named inventors of the patent, as interested and necessary parties to this lawsuit, requires dismissal for failure of complete diversity, and (5) Plaintiffs' fraud claims in Counts I, II, IV, and V should be dismissed for failure to plead those claims with particularity. Plaintiffs filed a brief in opposition to Defendants' motion on April 22, 1994. At a hearing on May 16, 1994, the court adjourned Defendants' motion to dismiss. The motion was later rescheduled for a hearing on July 21, 1994. After the court heard oral argument at the July 21st hearing, the court took Defendants' motion to dismiss under advisement. For the reasons that have been set forth below, Defendants' motion will be denied in part and granted in part.

### I.

In their motion, Defendants argue that this court lacks jurisdiction over the subject matter of this action. To begin, Defendants argue that the court lacks subject matter jurisdiction under 28 U.S.C. § 1655 because the "res," i.e., the patent owned by Invent, is not within this district.

court then adjourned the hearing on Defendants' motion to dismiss to allow Plaintiffs an opportunity to obtain new counsel. The order granting Defendants' motion to disqualify was entered on May 23, 1994.

On June 7, 1994, Plaintiffs filed a Motion for Reconsideration of the court's May 23, 1994 order. The court denied that motion without a hearing on June 16, 1994.

Next, Defendants contend that the court lacks subject matter jurisdiction under 35 U.S.C. § 256 over correction of the inventorship issue in Count III.

Additionally, Defendants contend that this court lacks subject matter jurisdiction over the assignment issue raised in Counts I and IV of the second amended complaint. Defendants argue it is well established that federal courts have exclusive jurisdiction of all cases arising under the patent laws, but assert that federal courts do not have jurisdiction of all questions in which a patent may be the subject of the controversy. Defendants maintain that Plaintiffs must invoke the court's equity under state law to void the assignment before moving on to the infringement claim. Thus, Defendants assert that Counts I and IV should be dismissed.

Second, Defendants argue that venue in this judicial district is improper under 28 U.S.C. § 1391(a) because none of the Defendants are residents of Michigan or have sufficient contacts here. Moreover, Defendants deny that a substantial part of the events giving rise to Plaintiffs' claims occurred in Michigan.

Third, Defendants contend that Robert Gielow and James Paul, the named inventors of the patent, and both Michigan residents, are interested and necessary parties to this lawsuit as complete relief cannot be accorded among the parties to the suit. Defendants argue that joinder of the inventors will defeat diversity jurisdiction. Consequently, Defendants contend that this case should be dismissed because a court order stating that the assignment from Gielow and Paul to Invent was of no effect would be prejudicial to Gielow and Paul.

Fourth, Defendants argue that dismissal of this lawsuit is appropriate because this court lacks personal jurisdiction over them under the Michigan long-arm statute.

Fifth and finally, Defendants argue that Plaintiffs' fraud claims in Counts I, II, IV, and V should be dismissed for failure to plead those claims with particularity. According to Defendants, Plaintiffs' complaint does not expressly state the nature or content of the false and misleading statements,

or any other relevant details such as time, places and victims of the underlying fraud, or even that Defendants knew that the alleged conduct was fraudulent.

## II.

In response, Plaintiffs argue that Defendants' motion to dismiss is completely without merit. First, Plaintiffs contend that this court has subject matter jurisdiction over the claims alleged in the second amended complaint. Plaintiffs assert that the express language of 35 U.S.C. § 256 provides the court with jurisdiction to order correction of inventorship. Moreover, Plaintiffs assert that this statute does not require the joinder of Gielow and Paul.

Plaintiffs further maintain that the court's jurisdiction over the assignment issues in Counts I and IV are not founded on 28 U.S.C. § 1655 but, rather, are founded on diversity jurisdiction and the doctrine of pendent jurisdiction. Plaintiffs assert that there is complete diversity between the parties and this action is for an amount in excess of $50,000. Thus, the assignment issues may be heard in this court.

Second, Plaintiffs assert that venue is proper because an alien can be sued in any district. Plaintiffs point out that all of the Defendants are aliens. Additionally, Plaintiffs contend that venue is proper in this district under 28 U.S.C. § 1391(a)(3) because a substantial part of the agreement was negotiated and finalized in Michigan.

Third, Plaintiffs assert that an inventor who is not an owner of the patent is not a "necessary" or "indispensable party" in a suit to correct ownership. Gielow, Paul, and Nelson were hired by Filtrona to develop the patentable air filter invention, but they do not retain any ownership in the invention. Plaintiffs submit that Gielow and Paul clearly state in their affidavits that they have no interest in the invention and do not own it. But in any event, Gielow and Paul are prepared to transfer any interest they may have to FFOC. Therefore, the inventors have no interest in this litigation and should not be joined under Rule 19.

Fourth, Plaintiffs argue that this court has personal jurisdiction over Defendants.

Fifth, Plaintiffs contend that their fraud claims are properly pled and should not be dismissed. Plaintiffs assert that they have satisfied the pleading requirements in paragraph 34 of their complaint.

## III.

### 1. *Federal Jurisdiction*

#### a. *Subject matter jurisdiction*

##### (i) *Diversity Jurisdiction*

Plaintiffs' complaint alleges that jurisdiction is conferred upon this court under 28 U.S.C. § 1332(a)(2) inasmuch as there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $50,000.

Plaintiff FFOC (formerly Filtrona Company) is a Michigan limited partnership, with its principal place of business in Michigan. Plaintiff Lynn Ledford is a resident and citizen of Michigan.[3] As for Defendants, Defendant Invent A.G. is a Liechtenstein corporation with its principal place of business in Liechtenstein. Defendant Cemix A.G. is a Swiss corporation with its principal place of business in Switzerland. Defendant Jorg von Schwabe is a resident and citizen of Germany. Defendant Jurik Kulakowski is a German domiciliary.[4] There being complete diversity between the parties, and no dispute that the amount in controversy exceeds $50,-000, the case is properly before the court on the basis of diversity.

##### (ii) *28 U.S.C. § 1655*

■ Defendants challenge this court's subject matter jurisdiction on two grounds. First, Defendants argue that the court lacks subject matter jurisdiction under 28 U.S.C. § 1655 because the "res," i.e., the patent owned by Invent, is not within this district. According to Defendants, the property at issue—U.S. Patent No. 5,002,597—is owned

by Invent, pursuant to the March 23, 1989 assignment. Therefore, Defendants argue that the res in question is not located "within the district."

Plaintiffs respond that the court's jurisdiction over the assignment issues in Counts I and IV are not founded on 28 U.S.C. § 1655 but, rather, are founded on diversity jurisdiction and the doctrine of pendent jurisdiction. Thus, Plaintiffs' claims may be heard in this court.

Title 28 U.S.C. § 1655 provides:

In an action in a district court to enforce any lien upon or claim to or to remove any incumbrance or lien or cloud upon the title to, real or personal property within the district, where any defendant can not be served within the State, or does not voluntarily appear, the court may order the absent defendant to appear or plead by a day certain.

Such order shall be served on the absent defendant personally if practicable, wherever found, and also upon the person or persons in possession or charge of such property, if any. Where personal service is not practicable, the order shall be published as the court may direct, not less than once a week for six consecutive weeks.

If an absent defendant does not appear or plead within the time allowed, the court may proceed as if the absent defendant had been served with process within the State, but any adjudication shall, as regards the absent defendant without appearance, affect only the property which is the subject of the action. When a part of the property is within another district, but within the same state, such action may be brought in either district.

Any defendant not so personally notified may, at any time within one year after final judgment, enter his appearance, and thereupon the court shall set aside the judgment and permit such defendant to

---

3. Although this fact is not alleged in Plaintiffs' complaint, it is asserted in the pleadings filed by Plaintiffs.

4. Plaintiffs' complaint simply alleges that von Schwabe and Kulakowski reside in Germany, but for the purposes of this motion to dismiss, the court will assume that they are also citizens of Germany.

plead on payment of such costs as the court deems just.

28 U.S.C. § 1655.

Apparently, Defendants believe that this court's subject matter jurisdiction is founded upon § 1655. This notion is incorrect. Section 1655 does not in and of itself confer jurisdiction. Rather, there must be some independent basis for subject matter jurisdiction in order to invoke this statute. *See* 14 Wright, Miller & Cooper, *Federal Practice and Procedure,* Civil § 3632, and cases cited at n. 3. The court earlier concluded that this case is properly before the court on the basis of diversity. Thus, Defendants' motion to dismiss pursuant to 28 U.S.C. § 1655 is denied.

■ Section 1655 does, however, give a federal court personal jurisdiction over all persons in actions to quiet title to real estate located in the state where the federal court sits. *McKinley v. Martin,* 722 F.Supp. 697, 699 (D.Wy.1989). Section 1655 "establishes venue and provides an alternative to personal service for actions to enforce a lien upon or a claim to real or personal property that is within the district, or to remove an incumbrance, lien, or cloud upon the title to the property, when defendant cannot be served within the state and does not appear voluntarily." *See* Wright & Miller, *Federal Practice and Procedure,* Civil § 3632, p. 28.

■ The express language of § 1655 requires as a condition precedent to its being invoked that there shall be "real or personal property within the district where such suit is brought." Courts have generally held that "[a] patent gives to the patentee nothing more than an intangible property interest; namely, the right to exclude others from the use of the patent." *Rainbow Rubber Co. v. Holtite Mfg. Co.,* 20 F.Supp. 913, 916 (D.Md. 1937); *Kleinschmidt v. Kleinschmidt Lab., Inc.,* 89 F.Supp. 869, 872 (N.D.Ill.1950); *McNulty v. Heine,* 137 F.Supp. 508, 510 (D.Md.1956). Thus, a patent, for the purposes of section 1655, may not be considered as a "res" with a definite situs within the district where the suit is brought. *Id.* Because this patent suit is not of the class of suits specified in § 1655, the court cannot exercise personal jurisdiction over the Defendants by virtue of this statute. Consequently, there must be some other basis for personal jurisdiction over the Defendants.

#### (iii) 35 U.S.C. § 256

■ Next, Defendants contend that this court lacks subject matter jurisdiction under 35 U.S.C. § 256 over correction of the inventorship issue in Count III because (i) all parties to the inventorship issue have not been named in the action, and (ii) this action is not solely devoted to the inventorship issue.

According to Defendants, 35 U.S.C. § 256 permits redress in federal court only under the following circumstances: (a) *all parties* must be given notice and an opportunity to be heard, and (b) if that is done, there is subject matter jurisdiction in the district court over a dispute raising *solely* a joint inventorship issue among contending co-inventors. Defendants point out that Gielow, Paul, and Nelson are not parties to this action. In addition, Defendants contend that this action is not solely concerned with inventorship because Plaintiffs' complaint also alleges breach of contract and specific performance and seeks injunctive relief in connection with the license to the patent. Accordingly, Defendants maintain that Count III should be dismissed as this court lacks subject matter jurisdiction over the inventorship issue.

Plaintiffs respond that the express language of 35 U.S.C. § 256 does not require the joinder of Gielow and Paul. Plaintiffs assert that an inventor who is not an owner of the patent is not an "indispensable party" in a suit to correct ownership. Plaintiffs assert that Gielow, Paul, and Nelson were hired by Filtrona to develop the patentable air filter invention, but they do not retain any ownership in the invention. On this ground, Plaintiffs aver that none of them have any interest in this litigation and, therefore, need not be joined to this suit to correct inventorship.

Title 35 U.S.C. § 256 provides:

Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named

in an issued patent and such error arose without any deceptive intention on his part, the Commissioner may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. *The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned* and the Commissioner shall issue a certificate accordingly.

35 U.S.C. § 256. (emphasis added).

In *MCV, Inc. v. King–Seeley Thermos Co.,* 870 F.2d 1568 (Fed.Cir.1989), the court held that a suit in district court for determination of co-inventorship and correction of a patent under 35 U.S.C. § 256 is permissible, and is an action "arising under" the patent laws for purposes of 28 U.S.C. § 1338(a) so that federal courts have jurisdiction under 28 U.S.C. § 1295(a)(1). The *MCV* court described the jurisdictional prerequisites as follows:

The statute prescribes only one prerequisite to judicial action: all parties must be given notice and an opportunity to be heard. If that is done, there is subject-matter jurisdiction in the district court over a dispute raising solely a joint inventorship issue among contending co-inventors.

*Id.* at 1570. (*citing Iowa State Univ. Found. v. Sperry Rand Corp.,* 444 F.2d 406, 410 (4th Cir.1971) (Under . § 256, "when relief is sought in court . . . notice and an opportunity for all parties to be heard are the only requisites for judicial action that Congress expressly prescribed."); *Dee v. Aukerman,* 625 F.Supp. 1427 (S.D.Ohio 1986)).

■ The *MCV* court clearly holds that all parties must be given notice and an opportunity to be heard. Thus, before this court may correct the inventorship, Gielow and Paul must be given notice of the action and an opportunity to testify on this issue, even though they are not parties to the action.

Defendants want to read the language of the *MCV* court very broadly to mean that all interested persons must also be joined to the action. *MCV* simply does not state that all concerned persons must be joined as parties. Thus, this argument must be rejected.

■ Additionally, Defendants latch on to the *MCV* court's statement that § 256 confers subject matter jurisdiction in the district court "over a dispute raising *solely* a joint inventorship issue among contending co-inventors." Defendants interpret this statement to mean that the action cannot involve any claims other than correction of inventorship. However, this court understands the *MCV* court as saying that § 256 is sufficient to confer subject matter jurisdiction over a correction of inventorship issue, even in those cases where the complaint fails to allege that federal patent law creates the cause of action or that a plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law.

This court's interpretation of the holding in *MCV* is supported by the analysis of another federal district court on this very same issue. In *Dee v. Aukerman,* 625 F.Supp. 1427 (S.D.Ohio 1986), the issue before the court was "whether § 256, when taken with 28 U.S.C. § 1335 [which grants the district courts original jurisdiction over patent cases], is sufficient in itself, in the absence of patent litigation as to the validity of a patent or whether same has been infringed, to confer jurisdiction over an inventorship dispute." *Id.* at 1428. In its discussion of this question, the court noted that the legislative history does not indicate "whether or not § 256 was intended to confer original jurisdiction in this Court to resolve *solely* an inventorship dispute." *Id.* at 1429. (emphasis in original).

The *Aukerman* court determined that the legislative history did not provide a clear answer to this question. Nonetheless, the court was satisfied that the express language of the statute, which makes reference to correction of a patent by the district court, along with "congressional interest in resolving inadvertent mistakes with respect to joint inventorship, and with respect to the addition of joint inventors after the issuance of a

patent" could be read together to confer subject matter jurisdiction. On this reasoning, the court stated, "[t]his Court sees no persuasive reason that § 256 should not be read as conferring subject matter jurisdiction over this case ..." *Id.* at 1430.

On the basis of *Aukerman* and *MCV*, this court concludes that § 256 is sufficient to confer subject matter jurisdiction over the correction of inventorship issue, provided that the other conditions of the statute are met, e.g., an inventor was omitted through innocent error.

As stated above, this case is properly before the court on the basis of diversity. Thus, this court is not required to rely on § 256 for subject matter jurisdiction over the balance of Plaintiffs' claims, and Defendants' motion to dismiss on this ground is denied.

### b. *Personal Jurisdiction*

 Once personal jurisdiction is challenged, the burden of affirmatively establishing its existence lies with the party invoking federal jurisdiction. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Weller v. Cromwell Oil Co.,* 504 F.2d 927 (6th Cir.1974). If the court relies upon the written submissions, it must examine the pleadings in a light most favorable to the plaintiff. *Serras v. First Tennessee Bank Nat'l Assoc.,* 875 F.2d 1212 (6th Cir.1989). The plaintiff's burden is satisfied by a *prima facie* showing that personal jurisdiction exists. *Id.* If a *prima facie* showing of personal jurisdiction is made, then the motion to dismiss is denied notwithstanding any controverting presentation by the moving party. *Id.*

 In diversity cases, assertion of personal jurisdiction must comport with both the state long-arm statute and the Due Process Clause of the United States Constitution. Fed.R.Civ.P. 4(e); U.S. Const. amend 5, 14; *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Michigan's long-arm statute divides cases into two categories. The first category provides for general personal jurisdiction, allowing a court to hear any action against the defendant, whether or not the case relates to the grounds for jurisdiction. *See* Mich. Comp.Laws Ann. § 600.701. The second category provides for limited personal jurisdiction, allowing a court to hear only those actions that arise out of the acts specified. *See* Mich.Comp.Laws Ann. § 600.705.

Although Michigan's long-arm statute appears to be a limited long-arm statute (setting forth situations that must be satisfied in order to exercise jurisdiction), the Michigan Supreme Court has held that the statute goes to the limits of due process. *Sifers v. Horen,* 385 Mich. 195, 188 N.W.2d 623 (1971).

For example, in *Kiefer v. May,* 46 Mich. App. 566, 208 N.W.2d 539 (1973), the court indicated that using the telephone and the mail to consummate a contract, even when the non-resident party was never physically present in Michigan, can constitute a transaction of business sufficient to provide limited personal jurisdiction. *See also Serras,* 875 F.2d at 1217 ("Extended negotiations between an out-of-state defendant and a resident plaintiff have been held to justify the imposition of Michigan long-arm jurisdiction.")

 Next, the court must consider whether due process requirements have been satisfied. Due process mandates that a district court exercise personal jurisdiction only if the defendant has sufficient "minimum contacts" with the State of Michigan, so that haling the defendant into a Michigan court would not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (*quoting Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)).

"In analyzing the due-process limits of personal jurisdiction, a distinction is made between 'general' jurisdiction and 'specific' jurisdiction." *Third Nat'l Bank v. WEDGE Group, Inc.,* 882 F.2d 1087, 1089 (6th Cir. 1989), *cert. denied,* 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953 (1990); *see also Conti v. Pneumatic Products Corp.,* 977 F.2d 978, 981 (6th Cir.1992).

"When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with

the forum, the State has been said to be exercising 'general jurisdiction' over the defendant." *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404 (1984). The Sixth Circuit has explained that a proper exercise of general jurisdiction requires that "a defendant's contacts with the forum state are of such a 'continuous and systematic' nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third Nat'l Bank*, 882 F.2d at 1089; *see also Conti*, 977 F.2d at 981.

█ Specific jurisdiction is exercised over a defendant in a suit which arises out of or is related to the defendant's contacts with the state. *Conti*, 977 F.2d at 981. In *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374 (6th Cir.1968), the Sixth Circuit adopted a three-part test for determining whether specific jurisdiction may be exercised in compliance with the requirements of due process, thereby allowing a court to properly exercise personal jurisdiction over a non-resident defendant:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

401 F.2d at 381. *See also LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1299 (6th Cir. 1989), *cert. denied*, 494 U.S. 1056, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990). The failure to meet any of these three requirements mandates that personal jurisdiction not be invoked. *LAK*, 885 F.2d at 1303.

The Michigan Supreme Court has defined "purposeful availment" as follows:

A 'purposeful availment' is something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something

more than a passive availment of Michigan opportunities.

*Khalaf v. Bankers & Shippers Ins. Co.*, 404 Mich. 134, 153, 273 N.W.2d 811 (1978). A single act can support jurisdiction as long as it creates the required relationship with the forum state. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957).

### (i) Jorg von Schwabe

█ Turning to Michigan's long-arm statute that deals with the exercise of limited personal jurisdiction over individuals, M.C.L.A. § 600.705 provides as follows:

The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of real or tangible personal property situated within the state.

(4) Contracting to insure a person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.

(6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.

(7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate mainte-

nance, property settlement, child support, or child custody.

Mich.Comp.Laws Ann. § 600.705.[5]

Plaintiffs contend that von Schwabe engaged in face-to-face negotiations with Ledford and Stepien in Michigan, in November 1988. Plaintiffs further contend that von Schwabe negotiated with Ledford in Michigan by phone and written communications. These negotiations involved the formation of a Michigan limited partnership and loans to the partnership. In addition, Plaintiffs submit that von Schwabe visited FFOC in 1989 to evaluate its progress. In support of these assertions, Plaintiffs submit letters between Defendants and Filtrona in which they discuss the formation of the limited partnership and in one letter von Schwabe refers to being in the Filtrona office. Finally, Plaintiffs submit that von Schwabe has purchased air filters from FFOC for his European venture. Plaintiffs argue that von Schwabe's physical presence in Michigan, in addition to the phone calls to Michigan to discuss the business, is sufficient contact to come within the Michigan long-arm statute. There is no doubt in this court's mind that von Schwabe has transacted business within this state and, therefore, his relationship with Michigan is sufficient to satisfy § 600.705(1).

Applying the three-part test of *Southern Machine* to the facts of the instant case, the court feels that all three prongs are satisfied as to von Schwabe. First, von Schwabe availed himself of the privilege of acting in the forum state. In his affidavit, von Schwabe admits that he has visited Michigan twice and that he has had several telephone discussions and written correspondence with Ledford in Michigan "regarding the formalization of a proposed air filter business project." By his own admission, von Schwabe visited Filtrona's place of business from Oc-

tober 30 to November 2, 1988, to observe the progress of Filtrona and to discuss the air filter "contemplated the formation" of Filtrona (now FFOC) to be in charge of marketing the air filter in the United States. Furthermore, von Schwabe admits that he caused money to be loaned to Cemix, which was then loaned to Filtrona.

Although von Schwabe states that he "did not transact any business in Michigan relating to the patent assignment, application or license," the court concludes that von Schwabe's activities relating to the air filter business project, are sufficient to establish that he purposefully availed himself of the privilege of acting in Michigan.

Second, Plaintiffs' claims arise from von Schwabe's activities within the forum state. Plaintiffs allege that von Schwabe made fraudulent misrepresentations to them in relation to the air filter business both in person and in phone conversations. Plaintiffs also allege that they relied upon those misrepresentations to their detriment. Moreover, Plaintiffs allege that von Schwabe breached the oral agreement between the investors that Invent would give to FFOC an exclusive license to exploit the patent in the U.S. The court finds that these allegations are sufficient to conclude that Plaintiffs' claims arise out of von Schwabe's activities in Michigan.

When the first two elements of the *Southern Machine* test are met, the inference arises that the third element is also present; only the unusual case will not satisfy the third criterion. *First Nat'l Bank of Louisville v. J.W. Brewer Tire Co.,* 680 F.2d 1123 (6th Cir.1982). This is *not* the unusual case. The facts of this case are sufficient to demonstrate that von Schwabe's connection with Michigan is substantial enough to make the

---

**5.** Michigan Compiled Laws Annotated § 600.701 provides for general personal jurisdiction over individuals as follows:

The existence of any of the following relationships between an individual and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise general personal jurisdiction over the individual or his representative and to enable such courts to render personal judgments against the individual or representative.

(1) Presence in the state at the time when process is served.

(2) Domicile in the state at the time when process is served.

(3) Consent, to the extent authorized by the consent and subject to the limitations provided in section 745.

Because Plaintiffs have not alleged that the court may exercise general personal jurisdiction over von Schwabe, the court will not analyze § 600.701.

exercise of personal jurisdiction over him reasonable.

### (ii) Cemix A.G. and Invent A.G.

Turning to Michigan's long-arm statute that deals with the exercise of limited personal jurisdiction over corporations, Mich. Comp.Laws Ann. § 600.715 provides as follows:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporations arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state.
>
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
>
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
>
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
>
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Mich.Comp.Laws Ann. § 600.715.[6]

 The Sixth Circuit has held that § 600.705(1) is to be interpreted broadly, and that "if defendant conducted even the slightest act of business in Michigan, the first statutory criterion for personal jurisdiction under Section 600.715(1) is satisfied." *Lanier v. American Bd. of Endodontics*, 843 F.2d

901, 906 (6th Cir.), *cert. denied*, 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988). This statute is also coterminous with the due process clause, and is only limited by due process considerations. *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293 (6th Cir.1989), *cert. denied*, 494 U.S. 1056, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990); *Kiefer v. May*, 46 Mich.App. 566, 208 N.W.2d 539 (1973). Again, the *Southern Machine* test must be applied to determine whether the exercise of specific jurisdiction over these defendant corporations is within the limits of due process.

### (a) Cemix A.G.

 Plaintiffs aver that the court may exercise personal jurisdiction over Cemix because it is a limited partner of FFOC and has made loans to FFOC, a Michigan limited partnership. Plaintiffs submit that Cemix has sent partnership contributions and loans to the partnership in Michigan until 1990.

Defendants respond that Cemix has not transacted or solicited any business in Michigan, has never contracted with any party to supply services or goods in Michigan, has never had any interest in real or personal property situated in Michigan, and is not licensed or registered to do business in Michigan. Additionally, Defendants assert that Cemix has never maintained any office or done any business whatever in Michigan.

It is clear to this court that Cemix has conducted an act of business in Michigan. Cemix is a limited partner of FFOC, a Michigan limited partnership. According to Plaintiffs, Cemix has paid partnership dues to FFOC and has loaned money to FFOC. Thus, Cemix has transacted business within the state and has satisfied § 600.715(1).

---

**6.** Mich.Comp.Laws Ann. § 600.711 provides for general personal jurisdiction over corporations as follows:

> The existence of any of the following relationships between a corporation and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise general personal jurisdiction over the corporation and to enable such courts to render personal judgments against the corporation.

> (1) Incorporation under the laws of this state.
> (2) Consent, to the extent authorized by the consent and subject to the limitations provided in section 745.
> (3) The carrying on of a continuous and systematic part of its general business within the state.

Because Plaintiffs have not alleged that the court may exercise general personal jurisdiction over Invent and Cemix, the court will not analyze § 600.711.

■ Moreover, the court concludes that Cemix has satisfied the three-part test of *Southern Machine*. First, Cemix has purposefully availed itself of the privilege of acting in Michigan by becoming a limited partner of a Michigan limited partnership. Second, Plaintiffs' complaint alleges that their claims arise from Cemix's activities in Michigan. In paragraph 32 of the complaint, Plaintiffs assert that Cemix persuaded Ledford to direct the execution of the assignment of patent rights from Gielow and Paul to Invent through false and misleading statements. Paragraph 34 states that Cemix used its status as a debtor of FFOC to persuade Ledford and FFOC to accept Cemix's misrepresentation that the assignment was necessary to avoid tax consequences and that FFOC would receive an exclusive license in return. Paragraph 35 asserts that Cemix's representations were false and were made for the sole purpose of having the patent owned and controlled by Invent, a company believed to be influenced and controlled by Cemix. The court finds that these allegations are sufficient to demonstrate that Plaintiffs' claims arise out of Cemix's activities with the forum state. Finally, Cemix's alleged acts or the alleged consequences of its acts are substantial enough to make the exercise of jurisdiction over it reasonable.

### (b) Invent A.G.

■ Plaintiffs state that "Invent has conducted a cause of communication regarding the license and in all respects has transacted business in Michigan." Plaintiffs' Brief at 13. Plaintiffs submit that Invent was incorporated in 1989 as an outgrowth of the agreements reached in 1988 at Ledford's offices in face-to-face meetings between von Schwabe, Kulakowski, Stepien and Ledford. Pursuant to these agreements, Invent received an assignment of the patent application which was prepared in Michigan and sent to Invent by FFOC from Michigan. Moreover, the air filters to which Invent currently holds title are being manufactured and marketed in and from Michigan and royalties are being paid from Michigan. In addition, there were numerous phone calls and written correspondence between Invent and Ledford. Thus, Plaintiffs argue that

Invent has had several business contacts with the state of Michigan.

Defendants respond that Invent has not transacted or solicited any business in Michigan, has never contracted with any party to supply services or goods in Michigan, has never had any interest in real or personal property situated in Michigan, and is not licensed or registered to do business in Michigan. Additionally, Defendants assert that Invent has never maintained any office or done any business whatever in Michigan. Defendants contend that von Schwabe did not act as agent of or on behalf of Invent in Michigan. Rather, all business relating to the air filter patent was conducted by Invent from Liechtenstein.

Of the three Defendants, the court is most concerned by the exercise of limited personal jurisdiction over Invent. If it is true that the air filters are being manufactured and marketed in and from Michigan and royalties are being paid from Michigan, as Plaintiffs assert, then there must be some kind of business agreement between FFOC and Invent. Consequently, Invent would have transacted business in Michigan and, thereby, satisfied § 600.715(1).

■ Next, the Court must apply the *Southern Machine* test to determine whether the due process requirements are met as to this defendant. Invent has purposefully availed itself of the privilege of acting in Michigan or causing a consequence in Michigan by manufacturing and marketing its air filter in and from Michigan. At first glance, it does not appear that this cause of action arises from Invent's activities in the forum state. When the parties allegedly agreed that FFOC would receive an exclusive license to exploit the patent in the U.S., Invent was not yet in existence. The formation of Invent was an outgrowth of the parties' negotiations concerning the air filter business project. As all four of the investors have an equal 25% interest in Invent, and there are apparently no officers of this company, none of them can be said to be acting or speaking on behalf of the company. On this basis, Defendants argue that Plaintiffs' claims cannot be said to have arisen from Invent's

activities in Michigan. Even assuming that the air filters are being manufactured and marketed in and from Michigan and royalties are being paid from Michigan, Plaintiffs' cause of action does not arise from any manufacturing or marketing concerns, rather from the patent itself. Thus, under this analysis, the second or third prongs of the *Southern Machine* test would not be satisfied.

However, this does not end the court's analysis. The court must consider a case cited by Plaintiffs in favor of this court's exercise of personal jurisdiction over Invent. In *Rees v. Mosaic Technologies, Inc.*, 742 F.2d 765 (3d Cir.1984), the Third Circuit rejected the district court's determination that pre-incorporation activities could not be considered in the jurisdictional calculus. The *Rees* court held that pre-incorporation activities of a promoter, later ratified by the corporation, may be considered in evaluating personal jurisdiction under the Pennsylvania long-arm statute. Moreover, the court held that "[t]he acts of ratification relate back to the time of the original activities and establish an agency relationship permitting the acts of the promoter to constitute, in effect, acts done by the corporation." *Id.* at 769.

According to Plaintiffs, the four investors agreed to organize Invent in order to hold title to the patent, and it was further agreed that Invent would give to FFOC an exclusive license to exploit the patent in the United States. Pursuant to the agreement, Invent was organized and was assigned title to the patent by Gielow and Paul. However, Invent has failed to grant the license to FFOC. Thus, Plaintiffs maintain that this litigation arises from Invent's failure to uphold the agreement made before its incorporation. Plaintiffs have made a persuasive argument that personal jurisdiction may be asserted over Invent on the basis of its ratification of the pre-incorporation agreements or activities. Invent has clearly accepted the benefits of the alleged pre-incorporation agreement that Invent would own the invention and the patents issuing thereon and, in exchange, Invent would grant a license to FFOC for the manufacture and exploitation of the patent in North America for a license fee and payment of a royalty.

Certainly, Invent's pre-incorporation activities provide more of a basis for personal jurisdiction than its post-incorporation activities. The court accepts Plaintiffs' argument that Invent's pre-incorporation activities may be considered in evaluating personal jurisdiction under Michigan's long-arm statute. Moreover, the court finds that all three prongs of the *Southern Machine* are satisfied. Specifically, the court concludes that (1) Invent has purposefully availed itself of the privilege of acting in the forum state, (2) the cause of action arises from Invent's pre-incorporation agreements to grant FFOC an exclusive license, and (3) these activities are a substantial enough connection with the forum state to make the exercise of jurisdiction over Invent reasonable.

Based on the foregoing analysis, the court concludes that the exercise of specific jurisdiction over all three Defendants comports with both Michigan's long-arm statute and the due process clause of the Fourteenth Amendment. Thus, this court's exercise of personal jurisdiction over Defendants would not "offend traditional notions of fair play and substantial justice." Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction is denied.

### 2. *Venue*

The general venue provisions applicable in cases where federal jurisdiction is founded on diversity of citizenship are set forth in 28 U.S.C. § 1391. Title 28 U.S.C. § 1391 provides:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is com-

menced, if there is no district in which the action may otherwise be brought.

. . . . .

(d) An alien may be sued in any district.

28 U.S.C. § 1391(a) & (d).

In their motion, Defendants argue that venue in this jurisdiction is improper under 28 U.S.C. § 1391(a) because none of the Defendants are residents of Michigan or have sufficient contacts here, and a substantial part of the events giving rise to Plaintiffs' claims did not occur in Michigan. In response, Plaintiffs correctly assert that venue is proper in this district under § 1391(d) because an alien can be sued in any district. At the hearing on this motion on July 22, 1994, Defendants conceded that venue is proper under subsection (d) and represented to the court that they are no longer contesting this issue. Thus, the court need not provide any further discussion of venue. .

### 3. *Fed.R.Civ.P. 19—Joinder of Parties*

Federal Rule of Civil Procedure 19 provides:

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the

venue of the action improper, that party shall be dismissed from the action.

(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgement rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19.

Rule 19 deals with "necessary" parties and "indispensable" parties. "A party is necessary if it satisfies the factors in Rule 19(a), and a party is indispensable if it satisfies the factors in Rule 19(b). If the party is necessary and indispensable, the case should be dismissed." *Sig Swiss Indus. Co. v. FRES-CO System U.S.A., Inc.,* 20 U.S.P.Q.2d, 1991 WL 64593 (BNA) 1148 (E.D.Pa.1991).

While an analysis of whether certain parties are to be joined is governed by Rule 19, the rules for joinder of parties in patent cases are somewhat tailored to the intricacies of patent law. For example, in patent litigation, the issue of who must be joined as an indispensable parties under Rule 19 is linked to the identity of the real party in interest. *See* 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure,* Civil § 1614, p. 205.

■ When a patentee has assigned his entire interest to a third party assignee, the patentee is at most, a proper party. *See* 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* Civil § 1614, pp. 212–213. *See also Kingshead Corp. v. Binney & Smith, Inc.,* No. 83 Civ. 4821, slip. op. (S.D.N.Y. Jan. 20, 1984)

("If a patent has been assigned to a third party, then that party becomes the real party in interest and the patent owner no longer qualifies as an indispensable party.") (*citing American Optical Co. v. Curtiss,* 59 F.R.D. 644, 648 (S.D.N.Y.1973); *Hook v. Hook & Ackerman, Inc.,* 187 F.2d 52, 54 (3d Cir.1951) ("Patentees who have parted with all ownership by assignment are not indispensable parties, although they may be necessary parties who should be made parties if that can be done without depriving the court of jurisdiction.")

 Defendants contend that Gielow and Paul, both Michigan residents, are necessary parties to this lawsuit. They assert that Gielow and Paul undoubtedly have interest in the subject matter of the litigation, and they should be allowed to protect their interests in the patent. Defendants point out that Plaintiffs are seeking a declaration that the assignment of the patent to Invent was invalid and ask the court to order Gielow and Paul to execute an Assignment of Ownership in the patent to FFOC. Furthermore, Defendants highlight the fact that Plaintiffs ask the court to add Ledford and Nelson to the patent as inventors. Without being joined to the suit, Defendants maintain that this court would be powerless to order non-parties to reassign the patent to FFOC. As Gielow and Paul are Michigan residents, joinder of these parties would defeat diversity of citizenship.

At the July 21st hearing, Plaintiffs maintained that Gielow and Paul have no interest in this action and need not be joined as parties to the action. Counsel for Plaintiffs argued that joinder of Gielow and Paul is not necessary under Rule 19(a) because they are not owners of the patent but, rather, were hired to develop the patent for FFOC. Plaintiffs' counsel further indicated that the inventors have received notice of the action, and that nothing more is required. Counsel for Defendants then argued that the court could not order the inventors to reassign the patent unless they were parties to the action. In response to Defendants' argument, Plaintiffs' counsel asserted that Plaintiffs wish to withdraw their prayer/request for the court to order reassignment of the patent by Gielow and Paul.

Plaintiffs' counsel also referred to affidavits executed by Gielow and Paul which are part of this court's record. In their affidavits, Gielow and Paul clearly state that they contracted with Filtrona to develop the air filter invention with the understanding that it would be owned and exploited by Filtrona. Furthermore, they claim no ownership in the patent, and are prepared to transfer any interest in the patent to FFOC in the event this court rescinds the assignment made to Invent. Even more, Gielow and Paul assert that they are prepared to give consent to the addition of Robert Nelson and Lynn Ledford as co-inventors.

Accepting these sworn statements as true and binding, this court cannot conclude that Gielow and Paul are necessary parties under Rule 19(a). Moreover, the joinder of Gielow and Paul would clearly defeat this Court's diversity jurisdiction as they are both citizens of Michigan.

Additionally, the relevant case law cited above demonstrates that Gielow and Paul are not indispensable parties under Rule 19(b) where they have assigned their entire interest in the patent to a third party, Invent. Therefore, the court can "in equity and good conscience" allow the action to proceed in their absence. Accordingly, Defendants' motion to dismiss for failure to join a necessary and indispensable party is denied.

At this juncture, the court must refer the parties to the above discussion of 35 U.S.C. § 256. Before the court can correct the inventorship, if the court so decides, all of the concerned parties must be given notice of the trial and an opportunity to testify. Thus, Plaintiffs are directed to provide the appropriate notice to all concerned parties, including Gielow, Paul, and Nelson.

### 4. *Plaintiffs' Fraud Claims*

 Federal Rule of Civil Procedure 9(b) sets forth special pleading requirements for all averments of fraud, providing in pertinent part:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

Fed.R.Civ.P. 9(b).

 The Sixth Circuit has stated that a plaintiff claiming fraud must at a minimum

allege the time, place, and content of the alleged misrepresentation on which they relied. *Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir.1984). Additionally, the identity of the person making the alleged misrepresentation must also be given, as well as what that person gained by the representation. *Leoni v. Rogers,* 719 F.Supp. 555 (E.D.Mich.1989). Failure to state a fraud claim with particularity constitutes failure to state a claim. *Benoay v. Decker,* 517 F.Supp. 490, 494 (E.D.Mich.1981), *aff'd without opinion,* 735 F.2d 1363 (6th Cir.1984). Thus, a complaint or any relevant part thereof, may be dismissed for failure to state a claim if the particularity requirement is not met in pleading fraud. *Id.*

Defendants argue that Plaintiffs' complaint does not expressly state the nature or content of the false and misleading statements, or any other relevant details such as time, places and victims of the underlying fraud, or even that Defendants knew that the alleged conduct was fraudulent. Plaintiffs respond that they have plead fraud with particularity as required by Rule 9(b), particularly in paragraph 34 of the complaint.

Paragraph 34 of the complaint states:

34. CEMIX, through Von Schwabe and Kulakowski, in November 1988 and in the State of Michigan, used its status as a debtor of FFOC to persuade Ledford and FFOC to accept CEMIX's misrepresentation that the assignment to INVENT was necessary to avoid substantial tax consequences and that FFOC would receive an exclusive license in return and Plaintiffs relied upon said statements to their detriment.

Plaintiffs' Complaint at 8.

Upon review of Plaintiffs' entire complaint, especially paragraph 34 as directed by Plaintiffs, the court concludes that Plaintiffs have not satisfied the special pleading requirements of Rule 9(b). Throughout the complaint, Plaintiffs refer to "false and misleading statements," "misrepresentations," "fraudulent representations," and "fraudulent

actions" allegedly made by Defendants, without providing any detail as to the time, place and content of the alleged fraud. Paragraph 34 does not even come close to pleading fraud with particularity.

At the July 21st hearing, the court gave Plaintiffs' counsel another opportunity to explain where, in the complaint or any other pleading, Plaintiffs sufficiently plead fraud with particularity as required by Rule 9(b). Counsel was unable to provide the court with an adequate response. For these reasons, Defendants' motion to dismiss Plaintiffs' fraud claims in Counts I, II, IV, and V of the complaint is granted.

### IV.

Based on the foregoing, Defendants' motion to dismiss is denied in part and granted in part. Defendants' motion to dismiss for lack of subject matter jurisdiction is denied; Defendants' motion to dismiss for lack of personal jurisdiction is denied; and Defendants' motion to dismiss Plaintiff's fraud claims is granted.